CITY OF PAWTUCKET *et al. vs.* PAWTUCKET TEACHERS' ALLIANCE LOCAL 930 *et al.*

MAY 21, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

PAOLINO, J. This bill in equity was brought by the City of Pawtucket and the school committee thereof seeking to

enjoin the respondents from striking. The bill was heard by a justice of the superior court on the complainants' prayer for a preliminary injunction. From a decree granting such injunction the respondents have prosecuted the instant appeal to this court.

The pertinent allegations of the bill are that on September 1, 1955 the school committee and the teachers' alliance, an organization of teachers who teach in the public schools of said city, entered into a contract for a term of two years; that on or about March 26, 1957 the members of the teachers' alliance held a meeting at which it was voted to strike unless a new contract could be agreed upon to go into effect upon the expiration of the existing contract on September 1, 1957; that the parties, after negotiating for some time, were unable to agree on a new contract; that a strike was called to become effective at 7 a.m. on September 4, 1957; and that the strike was in fact called on said date and was in effect on September 5, 1957 when the instant bill was filed.

The bill also alleged that the school committee directed the teachers to report for duty as usual on September 4, 1957, a day regularly scheduled for school, but that they failed and refused to report for duty on that date; that if the strike was not restrained substantial and irreparable injury would be sustained by the students enrolled in the public schools, in that they would be deprived of the education to which they are entitled from the city; and that such strike would disrupt the school year and cause the closing of the schools and would prevent the superintendent of schools and the school committee from effectively carrying out their statutory duties and obligations.

After the hearing the trial justice filed a rescript in which he noted that there are about 460 teachers serving approximately 10,000 pupils in the public schools of said city and that some of the teachers reported for work. He also observed that there was no doubt that the strike was effective

as a strike from the beginning; that the schools did not open in the normal manner on September 4, the scheduled day for opening; and that the process of education of the children who attend the public schools had been completely halted.

After carefully reviewing the record before him, the trial justice among other things concluded that the teachers are an integral part of the government of the city; that they are governmental employees and have no legal right to strike against the government; and that therefore, on the law and evidence before him, the present strike was illegal and complainants were entitled to the relief requested.

Thereafter a decree was entered in which the trial justice found that the strike was illegal and granted the prayer for a preliminary injunction. The decree further provided (1) that the respondents be enjoined from furthering, aiding or abetting the strike; (2) that they be enjoined from disrupting in any manner the school program; (3) that they be enjoined from taking any steps to prevent the resumption of normal activities of the teachers and students in the public schools of the city of Pawtucket; and (4) that respondents and all members of the teachers' alliance named or unnamed are ordered and directed to rescind and recall prior to 8 a.m., September 16, 1957, any order declaring such strike.

The respondents have filed eight reasons of appeal to support their contention that the trial justice erred in granting a preliminary injunction. Under their first reason of appeal they argue that since he made a finding that a labor dispute existed between the school committee and the teachers' alliance, the superior court was without jurisdiction to issue a preliminary injunction, because the trial justice did not comply with the requirements of general laws 1938, chapter 299, section 1, as amended by public laws 1951, chap. 2748. The respondents contend that chap. 299, as amended, which is our anti-injunction law and is some-

times referred to as the "Little Norris-LaGuardia Act," applies to the instant case.

They argue that, a labor dispute having been found to exist, the trial justice was compelled to make all the findings of fact required by chap. 299 in order to acquire jurisdiction to issue an injunction. They cite *Lindsey Tavern, Inc.* v. *Hotel & Restaurant Employees, Local 307 AFL,* 85 R. I. 61, 125 A.2d 207, to support such contention. In our opinion the instant case, relating as it does to a labor dispute between a governmental subdivision of the state and governmental employees, is not governed by the *Lindsey Tavern* case, which involved a labor dispute between employers and employees in a private industry. In that case we held that the superior court was without jurisdiction to enter an injunction because it had failed to comply with all the requirements of chap. 299. The same would hold true in the case at bar if respondents were not governmental employees performing a governmental function.

Section 1 of chap. 299 provides in part that "No court of this state shall have jurisdiction to issue a temporary or permanent injunction in any case involving a labor dispute," except after certain specific requirements expressly set forth therein have been met. Section 2 defines "labor dispute" as follows: "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

The act contains no language which would lead us to believe that the legislature intended the act to apply to any case in which the state, or any political subdivision thereof, was involved as a party in a labor dispute with its own employees. The abuses which anti-injunction legislation was aimed at correcting did not involve labor disputes

between the government, national, state or local, and its employees.

The history of anti-injunction legislation shows that it was enacted to prevent abuses resulting from the use of the injunction in labor disputes arising in private industry. In the instant case we are concerned only with the right of a political subdivision of the state government to injunctive relief in a dispute with its own employees. In the absence of clear language indicating expressly or by necessary implication that chap. 299, *supra,* as amended, applies to disputes between the state or any political subdivision thereof and its own employees, it is our opinion that the instant issue is governed by the exclusionary rule referred to in *United States* v. *United Mine Workers,* 330 U. S. 258, where the court said at page 272: "There is an old and well-known rule that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect."

It is also our opinion that if the state legislature had intended that the statute in question was to apply to disputes between the state or any of its political subdivisions and their own employees it would have used clear and specific language to that effect. In *Brown University* v. *Granger,* 19 R. I. 704, this court stated at page 708:

"It is doubtless true that, in the construction of statutes whereby the State has abrogated a part of its sovereignty, the strict rule of interpretation contended for obtains, on the ground that the presumption is against such abrogation of power. And as in England the Crown is not reached by statute except by express words, or by necessary implication, in any case where it would be ousted of an existing prerogative or interest, so here the State is not reached in any such case except by the use of express words, or by necessary implication. That is to say, it is to be presumed that the Legislature does not intend to deprive the State of any part of its sovereign power unless the intent to

do so is clearly expressed, or arises by necessary implication from the language employed."

In the case of *United States* v. *United Mine Workers, supra,* at page 273, the supreme court of the United States held that the Norris-LaGuardia Act did not affect the jurisdiction of the courts to issue injunctions when sought by the United States in a labor dispute with its own employees. We agree with the reasoning of the court in that case and it is therefore our opinion that the legislature, in enacting our state anti-injunction law, did not intend to withdraw from the state and its political subdivisions existing rights to injunctive relief against its own employees. See *Manchester* v. *Manchester Teachers Guild,* 100 N. H. 507, 511. For these reasons the superior court did not lack jurisdiction to issue a preliminary injunction in the instant case.

However, although the superior court had such jurisdiction, the question remains whether it erred in exercising the same in the case at bar. Under the third and fourth reasons of appeal respondents contend that the decree entered by the trial justice is against the law, the evidence and the weight thereof. The evidence is undisputed that respondents were in fact actually on strike at the time the bill was filed and the preliminary injunction granted. It is also clear from the instant record that although the picketing was peaceful, nevertheless the strike was almost 100 per cent effective and effectually closed the schools. If the instant dispute were one between the respondents and a private employer, there is no doubt that the activities of respondents would be lawful. See *Bomes* v. *Providence Local No. 223, Motion Picture Operators,* 51 R. I. 499.

However, that is not the issue before us. The only issue under respondents' third reason of appeal is the correctness of the trial justice's ruling that the teachers are an integral part of the government of the city of Pawtucket; that they are governmental employees and have no legal

right to strike against the city; and that such a strike is illegal and subject to injunction.

Under the provisions of article XII of the state constitution education is a state function. As such it is administered and carried out by the cities and towns, through their school committees, as agencies of the state government by virtue of legislation enacted pursuant to said article XII. See G. L. 1938, title XXI, and amendments thereto. The teachers who were involved in the strike in the instant case are, therefore, agents of the state government and as such exercise a portion of the sovereign power. The determination of the present issue depends upon the basic difference between governmental employment and employment in private industry. In *Norwalk Teachers' Ass'n* v. *Board of Education*, 138 Conn. 269, the court stated at page 273: "Under our system, the government is established by and run for all of the people, not for the benefit of any person or group. The profit motive, inherent in the principle of free enterprise, is absent. * * * The drastic remedy of the organized strike to enforce the demands of unions of government employees is in direct contravention of this principle."

As we have previously stated, the school committee in the case at bar is an agency of the state in charge of education in the public schools of the city of Pawtucket. See *Board of Education of Stamford* v. *Board of Finance*, 127 Conn. 345, 349. It is our opinion that, in carrying out its duties as an agency of the state government, the school committee in the instant case is acting in a governmental capacity. In *Gray* v. *Wood*, 75 R. I. 123, at page 126, we said: "There can be no question that those charged with the supervision, direction and control of public education in Rhode Island are public officers or officials exercising a governmental function." Teachers only in a less degree than supervisory officials participate in such function.

Although the instant issue is a question of first impres-

sion in our state, it has been generally held that persons exercising a portion of the sovereign power have no right to strike against the government, be it federal, state or a political subdivision thereof. One reason for the policy against such strikes is the absence of the profit motive on the part of the government, but the underlying basis is the doctrine that governmental functions may not be obstructed or impeded. *Manchester* v. *Manchester Teachers Guild, supra,* and cases cited therein. *Miami Water Works Local No. 654* v. *City of Miami,* 157 Fla. 445.

In *Norwalk Teachers' Ass'n* v. *Board of Education, supra,* the court stated at page 276:

> "In the American system, sovereignty is inherent in the people. They can delegate it to a government which they create and operate by law. They can give to that government the power and authority to perform certain duties and furnish certain services. The government so created and empowered must employ people to carry on its task. Those people are agents of the government. They exercise some part of the sovereignty entrusted to it. They occupy a status entirely different from those who carry on a private enterprise. They serve the public welfare and not a private purpose. To say that they can strike is the equivalent of saying that they can deny the authority of government and contravene the public welfare."

We believe that such statement is applicable to the instant case. In our opinion the constitutional rights of respondents to assemble and petition for redress of grievances under article I, sec. 21, of the state constitution are not violated by this doctrine. *Manchester* v. *Manchester Teachers Guild, supra,* and cases cited therein.

It is not the province of the courts to pass upon the reasonableness of the demands of the teachers for salary increases. That is the responsibility of those chosen by the people to administer the schools. While we hold that those accepting government employment as teachers must ac-

knowledge that the functions of government in a democracy cannot be impeded or obstructed by strikes, we recognize their right collectively as well as individually to present demands for just and reasonable remuneration for their services. We are not unmindful of the disparity existing in many cases in the salaries of public officers as compared with similar positions in private employment. However, the acceptance of a position involving the exercise of some degree of sovereignty necessarily implies a surrender of certain personal rights and privileges which, though properly exercisable in private employment, are in public employment inconsistent with the public interest. Hence the question of the necessity and wisdom of providing adequate compensation for those to whom are entrusted the training of our children during their formative years is in no way to be deemed involved in the present decision.

We have read the opinion in *Board of Education* v. *Public School Employees Union Local No. 63, AFL,* 233 Minn. 144, which has been cited by respondents. That case was decided on the court's interpretation of the Minnesota statute. We have no similar statute and therefore that case does not apply here. It is our opinion that the strike in the instant case was illegal and therefore was properly enjoined. The preliminary injunction restrained the concerted action of the respondents but did not in any way impose on any individual an obligation to work against his will. See *Manchester* v. *Manchester Teachers Guild,* 100 N. H. 507, 512.

We have considered the other contentions advanced by the respondents under their remaining reasons of appeal and have found them to be without merit.

The respondents' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*John A. O'Neill,* City Solicitor, *Harvey J. Ryan,* Assistant City Solicitor, for complainants.

*Corcoran, Foley & Flynn, Francis R. Foley,* for respondents.