377 A.2d 1071.

JOHN A. CUMMINGS, *Mayor of the City of Woonsocket vs.* WILFRED L. GODIN.

AUGUST 30, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

BEVILACQUA, C.J.    This is an appeal in a declaratory judgment action. The Mayor of Woonsocket sought a judgment in Superior Court declaring that the provisions of the Woonsocket Home Rule Charter prohibiting city employees from holding elective offices are constitutional[1] and that the defendant, a public school teacher in the city of Woonsocket, is a city employee to whom these provisions are applicable. The case was submitted on an agreed statement of facts:

> "1. Defendant is and has been a certified teacher in the Woonsocket Education Department since 1962, which said position is unclassified according to the

---

[1] In *Opinion to the House of Representatives,* 100 R.I. 345, 216 A.2d 124 (1966), the question of the constitutionality of substantially similar provisions was raised. However, because the court cannot render advisory opinions on laws already enacted and it was not specified that the inquiry pertained to pending or proposed legislation, we did not rule on this issue.

definition of classified service set forth in Section 2.1 of Personnel Ordinance of the City of Woonsocket. * * *

"2. Defendant ran as an unendorsed candidate in the Democratic Primary to represent Senatorial District 32 in the Rhode Island Senate. Defendant was victorious in the Primary as well as in the regular election. Defendant officially assumed the position on January 7, 1975.

"3. The Woonsocket Home Rule Charter provides:

No person employed by the City, other than an elective officer, shall assume any elective office unless he first resigns his position with the City (Chapter XVI, Article 9, Section 2, of the Home Rule Charter)

No person may hold any office or employment in the City while at the same time holding any office or employment in the federal, state or local government or agencies thereof ... [except in certain enumerated instances] (Chapter XVI, Article 9, Section 3, of the Home Rule Charter)

Any person violating any provision of this Article shall forthwith forfeit any and all municipal office or offices which he holds. (Chapter XVI, Article 9, Section 4 of the Home Rule Charter.)

It shall be the duty of the Mayor to see that the laws and ordinances are enforced. (Chapter IV, Section 3(a))

* * *

"4. Defendant assumed the post of State Senator on January 7, 1975, without having resigned his position in the Woonsocket Education Department. At the present time, he is holding employment as a teacher as well as holding office in the State government.

"5. Defendant's salary is negotiated by the Woonsocket School Committee and the Woonsocket Teachers' Guild, AFT #851, AFL-CIO.

"6. The education budget including teachers salaries is submitted by the Woonsocket School Committee to the Woonsocket City Council.

"7. The City Council has final approval of the gross amount of the education budget although once appropriated, not over the expenditure of funds therefrom.

8. The education budget is supported by money raised from the people of Woonsocket through taxes and by receipt of state aid and occasional Federal funding."

The trial justice held that public school teachers are city employees and that the charter provisions prohibiting city employees from holding elective offices was constitutional. The defendant, on appeal, contends that the trial justice erred for several reasons: (1) that a public school teacher is not a city employee and thus is not covered by the charter provisions; (2) that even if public school teachers are city employees, the charter cannot prohibit them from holding elective office since local regulation of education is not authorized unless the General Assembly has expressly delegated that power; (3) that the charter provisions are invalid because they regulate state elections and set qualifications for holding office; (4) that since the Legislature, the sole judge of the qualifications of its members, has not disqualified defendant, it is clear they did not intend to delegate authority to the City of Woonsocket to prohibit teachers from holding elective office; and (5) that the charter provisions are unconstitutionally overbroad and violate the First Amendment because they prohibit city employees from holding any elective office.

I

The defendant initially contends that public school teachers are not city employees; and, as a result, are not covered by the provisions of ch. XVI, art. 9 of the charter.

In support of this argument, defendant cites *City of Pawtucket* v. *Pawtucket Teachers' Alliance*, 87 R.I. 364, 141 A.2d 624 (1958), where this court stated that under the Rhode Island Constitution education was a state function, and, as such, was carried out by the cities and towns, through their school committees, as agencies of the state government. Therefore, we concluded, teachers are agents of the state government and may be enjoined from striking. The defendant thus argues that since school teachers are agents of the state, they cannot be municipal employees. We agree with the trial justice's conclusion that the defendant misconstrues our language in *City of Pawtucket* v. *Pawtucket Teachers' Alliance, supra,* and misinterprets the General Assembly's intent in creating local school committees. In *City of Providence* v. *Local 799, Int'l Ass'n of Firefighters,* 111 R.I. 586, 589, 305 A.2d 93, 95 (1973), this court stated that a body having no statewide authority and performing no statewide function is not a state agency. Thus, school committees are agencies of the state, but are not "state agencies," since they act only on matters of local concern. Moreover, this court explicitly stated in *City of Pawtucket* v. *Pawtucket Teachers' Alliance, supra,* that the cities and towns, through *their* school committees, perform a state function based upon a delegation of power from the General Assembly. Thus, the school committees, although exercising a portion of *the state's* power over education, are, nonetheless, municipal bodies, and their employees, including public school teachers, are municipal employees

Furthermore, as noted by the trial justice in his decision, the General Assembly in G.L. 1956 (1969 Reenactment) §16-6-2 defined a teacher as "every person *employed by any city or town as a teacher * * ** in any public school in the state who is required by law to hold a certificate of qualification * * * ." (Emphasis added.) It is evident from a careful reading of this statute and the previously discussed case law that school committees are not state agencies; they are municipal bodies acting as agent for the state in that they

exercise state power that has been delegated to them by the state.

Moreover, the General Assembly's specific validation and ratification of each provision contained in the Woonsocket Home Rule Charter further supports our conclusion that defendant is a city employee. Public Laws 1953, ch. 3235 and P.L. 1969, ch. 234 §3. In ch. XIV of the charter the Woonsocket School Committee is designated as the Woonsocket Department of Education, a department of the city of Woonsocket. Since each provision was expressly validated by the General Assembly, such designation constitutes an act of the General Assembly and manifests a clear intent that the school committee is a municipal body and all of its employees, city employees.

Finally, as the trial justice noted in his opinion, defendant is employed by a department of the city which is supported by the taxpayers of that city, and he receives his paycheck from the city.

Therefore, we conclude that the General Assembly intended that the Woonsocket School Committee be a municipal body and that school teachers employed by the school committee be considered city employees. As a result, defendant, as an employee of the city, is subject to the provisions of ch. XVI, art. 9 of the charter prohibiting him from holding his position as a teacher and the office of state senator at the same time.

## II

The defendant next argues that the Woonsocket Home Rule Charter provisions at issue in the instant case constitute local regulation of education, and that since the Legislature has not expressly delegated to the city the power to regulate school teachers in this manner, these provisions are invalid. However, since the General Assembly ratified each and every provision of this charter, P.L. 1953, ch. 3235 and P.L. 1969, ch. 234, §3, defendant's argument must fail.

## III

The defendant's third contention is that the charter provisions forcing him to choose between his employment as a teacher and his office as state senator are invalid because the city is, in effect, regulating state elections and setting qualifications for holding state office, an area exclusively reserved for regulation by the state. This contention is without merit. The charter provisions do not attempt to limit the right to vote or to establish qualifications for office. The city employee is free to run for office; the provisions simply require that, if elected, the employee must choose between that office and his city employment. Moreover, if the employee fails to make such a choice, the charter does not disqualify him from holding elective office, but requires that he forfeit his city employment.

## IV

The defendant next contends that since the senate did not disqualify him, it is evident that it did not delegate the power of regulation to the city. However, as we previously noted, the charter provisions do not attempt to disqualify defendant from membership in the state senate. They simply provide that he must choose between the two positions, and that if he fails to do so, he must forfeit employment with the city. Consequently, this argument is without merit.

## V

Finally, defendant contends that these charter provisions violate first amendment rights. Specifically, defendant argues that these provisions are overly broad because they purport to regulate protected as well as unprotected conduct, i.e., they prohibit city employees from holding *any* elective office, partisan and nonpartisan, state, local and federal. We agree.

The simultaneous holding of more than one public office has been a traditional subject of public concern. *Osetek* v.

*City of Chicopee*, 370 Mass. 110, 345 N.E.2d 897 (1976) The holding of incompatible offices is prohibited under the common law. *See McCabe* v. *Kane*, 101 R.I. 119, 221 A.2d 103 (1966); *State ex rel. Metcalf* v. *Goff*, 15 R.I. 505, 9 A. 226 (1887); *State* v. *Brown*, 5 R.I. 1 (1857). This common law rule against incompatibility has not been restricted solely to office-holding but has been interpreted to include public employment.[2] *See Knuckles* v. *Board of Educ. of Bell City*. 272 Ky. 431, 114 S.W.2d 511 (1938) and cases cited therein; *Haskins* v. *State ex rel. Harrington*, 516 P.2d 1171 (Wyo. 1973). In addition, constitutional and statutory provisions frequently prohibit not only the holding of incompatible offices, but the holding of more than one office or employment, whether or not the positions held would be incompatible under the common law rule. *Doyle* v. *City of Dearborn*, 370 Mich. 236, 121 N.W.2d 473 (1963); 63 Am. Jur. 2d *Public Officers and Employees* §63 (1972). See 3 Mc-

---

[2]The test for determining whether positions are incompatible was clearly enunciated in *State ex rel. Metcalf* v. *Goff*, 15 R.I. 505, 506-07, 9 A.226, 226-27 (1887) where this court stated:

> "[I]ncompatibility does not depend upon the incidents of the offices, as upon physical inability to be engaged in the duties of both at the same time.
>
> " * * * The test of incompatibility is the character and relation of the offices: as where one is subordinate to the other, and subject in some degree to its revisory power; or where the functions of the two offices are inherently inconsistent and repugnant."

We have also held that a conflict of interest as distinguished from one of duties does not create an incompatibility, *McCabe* v. *Kane*, 101 R.I. 119, 221 A.2d 103 (1966).

In the instant case, since there is no inherent inconsistency or repugnancy between the duties of a public school teacher and a state senator, the question is whether the character and relation of each to the other are such as to make the position of public school teacher subordinate to the Legislature. *McCabe* v. *Kane*, *supra*. Although the Legislature has plenary power over education, we cannot conclude that such power renders the position of public school teacher subordinate to the Legislature. The Legislature's power is state-wide; local control is exercised by the school committees of the towns and cities. It is the local school committee which supervises, hires and dismisses its teachers. Thus, the Legislature's control over an individual school teacher is extremely attenuated and indirect. As a result, we conclude that the positions of school teacher and state senator are not incompatible.

Quillin, *Municipal Corporations*, §12.66 (3d ed. rev. 1973). These restrictions are generally designed to prevent multiple position-holding so that offices and positions of public trust will not accumulate in a single person, and to prevent individuals from deriving, directly or indirectly, any pecuniary benefit by virtue of their dual position-holding. 63 Am. Jur. 2d *Public Officers and Employees* §61 (1972). In essence, their purpose is to insure that public officeholders and public employees discharge their duties with undivided loyalty, 3 McQuillin, *Municipal Corporations* §12.67.

A general survey of case law and materials applying the common law rule against incompatibility and statutory restrictions on dual position-holding fails to disclose any discussion of constitutional limitations on such restrictions. However, at the time most of these cases were decided, public employment and office-holding were considered privileges to which any conditions, even those infringing on constitutional rights, might be attached. Since then, the distinction between privileges and rights has been eliminated, and unconstitutional conditions cannot be placed on public employment. *Pickering* v. *Board of Educ.*, 391 U.S. 563, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968); *Keyishian* v. *Board of Regents*, 385 U.S. 589, 87 S. Ct. 675, 17 L. Ed. 2d 629 (1967). *See also Sherbert* v. *Verner*, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963).

It is well-established that the first amendment protects freedom of political expression and activity. As the United States Supreme Court stated in *Sweezy* v. *New Hampshire*, 354 U.S. 234, 250 77 S. Ct. 1203, 1212, 1 L. Ed. 2d 1311, 1325 (1957):

> "Equally manifest as a fundamental principle of a democratic society is political freedom of the individual. Our form of government is built on the premise that every citizen shall have the right to engage in political expression and association. This right was enshrined in the First Amendment of the Bill of Rights.

> Exercise of these basic freedoms in America has traditionally been through the media of political associations."

Numerous courts have recognized that candidacy for public office is one of the rights included within the scope of the first amendment. *Broadrick* v. *Oklahoma,* 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973); *United States Civil Serv. Comm'n* v. *National Ass'n of Letter Carriers,* 413 U.S. 548, 93 S. Ct. 2880, 37 L. Ed. 2d 796 (1973); *Magill* v. *Lynch,* 400 F. Supp. 843 (D.R.I. 1975), *rev'd* on other grounds, 560 F.2d 22 (1st Cir. 1977) Cert. Denied, 434 U.S. 1063, 98 S. Ct. 1236, 55 L. Ed. 2d 763 (1978); *Mining* v. *Wheeler,* 378 F. Supp. 1115 (W.D. Mo. 1974); *Elder* v. *Rampton,* 360 F. Supp. 559 (D.Utah 1972); *Alex* v. *County of Los Angeles,* 35 Cal. App.3d 994, 111 Cal. Rptr, 285 (1974); *Boston Police Patrolmen's Ass'n* v. *City of Boston,* 367 Mass. 368, 326 N.E.2d 314 (1975); *Johnson* v. *State,* 280 Minn. 61, 157 N.W.2d 747 (1968); *Ivancie* v. *Thornton,* 250 Ore. 550, 443 P.2d 612 (1968); *Minielly* v. *State,* 242 Ore. 490, 411 P.2d 69 (1966); *Commonwealth ex rel. Specter* v. *Moak,* 452 Pa. 482, 307 A.2d 884 (1973). Furthermore, in *Commonwealth ex rel. Toole* v. *Yanoshak,* 464 Pa. 239, 346 A.2d 304 (1975), the court explicitly held that the right to hold public office was one of the rights protected by the first amendment. Moreover, the other courts which have considered the issue have implicitly recognized in their analysis that restrictions on dual position-holding involve first amendment rights, *State ex rel. Gonzales* v. *Manzagol,* 87 N.M. 230, 531 P.2d 1203 (1975); *Haskins* v. *State ex rel. Harrington, supra. See also Lay* v. *City of Kinsport,* 454 F.2d 345 (6th Cir. 1972). *Contra, Wilson* v. *Moore,* 346 F. Supp. 635 (N.D.W.Va. 1972).[3] Since the

---

[3]The court in *Wilson* v. *Moore,* 346 F. Supp. 635 (N.D.W.Va. 1972), specifically found that the right to seek and hold public office is not one of the rights included within the protection of the first amendment. However, this case is of doubtful precedential value in view of the Supreme Court's subsequent holdings in *Broadrick* v. *Oaklahoma,* 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973) and *United States Civil Serv. Comm'n* v. *National Ass'n of Letter Carriers,* 413 U.S. 548, 93 S. Ct. 2880, 37 L. Ed. 2d 796 (1973).

holding of public office, like candidacy for public office, is a significant form of political expression and activity, we conclude that the right to hold public office is one of the rights included within the ambit of the first amendment.

It is well-settled that where the constitutionality of a restriction on first amendment rights is at issue, the governmental unit has the burden of showing that it has a compelling interest warranting the infringement of these rights and that the restriction is the least drastic means of achieving the governmental purpose. *Broadrick* v. *Oklahoma, supra* at 611-12, 93 S. Ct. at 2915, 37 L. Ed. 2d at 839-40; *Ivancie* v. *Thornton; Minielly* v. *State; Commonwealth ex rel. Toole* v. *Yanoshak; Commonwealth ex rel. Specter* v. *Moak,* all *supra.* Where this test is not satisfied, the restriction is overly broad and thus, unconstitutional.

In the instant case, defendant, in arguing that the charter provisions are overbroad, analogizes these provisions to the Federal Hatch Act and the "Little Hatch Acts" of the various states, citing *Broadrick* v. *Oklahoma* and *United States Civil Service Comm'n* v. *National Ass'n of Letter Carriers,* both *supra,* for the proposition that a prohibition against public employees becoming candidates for nonpartisan as well as partisan public office is overbroad.[4]

In *Letter Carriers* federal employees challenged as unconstitutionally overbroad and vague the prohibition in §9(a) of the Hatch Act, 5 U.S.C.A. §7324(a)(2), against federal employees' taking "an active part in political management or

---

[4]*But see Magill v. Lynch,* 560 F.2d 22 (1st Cir. 1977), Cert. Denied, 434 U.S. 1063, 98 S. Ct. 1236, 55 L. Ed. 2d 763 (1978), where the First Circuit Court of Appeals reversed the District Court's holding that a city charter prohibition against city employees' candidacy for elective office was unconstitutional as applied to firemen who were candidates for nonpartisan office. The First Circuit Court held that whether the election was labeled partisan or nonpartisan was not critical; the issue was whether the city's interests were served by the restriction and whether the restriction was narrowly drawn to achieve these purposes. Since this issue was not addressed in the District Court,, the case was remanded for consideration of the plaintiffs' overbreadth claim.

in political campaigns."[5] The Supreme Court stated that neither the right to associate nor the right to participate in political activities is absolute. The government has an interest in regulating the conduct and speech of its employees, an interest that

> " 'differ[s] significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* at 564, 93 S. Ct. at 2890, 37 L. Ed. 2d at 808, *quoting Pickering* v. *Board of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35, 20 L. Ed. 2d 811, 817 (1968).

The Court found that the first amendment did not invalidate a law barring partisan political conduct by federal employees in view of the governmental interest in promoting efficiency and preventing corruption and coercion. They further held that the statute was neither overbroad nor vague because incorporated in the definition of "an active part in political management or in political campaigns" were "those acts of political management or political campaigning which were prohibited on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission under the rules prescribed by the President." 5 U.S.C.A. §7324(a)(2). Finally the Court held that even if some provisions were unconstituitonally overbroad, the entire statute would not be invalidated since the remainder of the statute covered a whole range of easily identifiable and constitutionally proscribable *partisan* conduct on the part of federal employees, and the extent to which pure expression was impermissibly

---

[5]Several of the employees had been or wanted to be candidates for public office in partisan elections.

threatened did not make the statute substantially overbroad and thus invalid on its face.

In *Broadrick*, state employees, charged with actively participating in *partisan* political activities in violation of an Oklahoma statute patterned after the Hatch Act, challenged the statute's validity on the grounds of vagueness and overbreadth.[6] The Supreme Court held that the statute was clearly constitutional as applied to the conduct with which the employees were charged, i.e., partisan political activity, and further held that because the statute was not "substantially overbroad," the employees could not challenge the statute on the ground that it might be unconstitutionally applied to others. In so holding the Court noted that the traditional rules of standing were altered in the first amendment area to permit " 'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' " *Id.* at 612, 93 S. Ct. at 2916, 37 L. Ed. 2d at 840, *quoting Dombrowski* v. *Pfister*, 380 U.S. 479, 486, 85 S. Ct. 1116, 1121, 14 L. Ed. 2d 22, 28 (1965). However, the Court stated that the application of the overbreadth doctrine has been employed "sparingly and only as a last resort," and has not been invoked "when a limiting construction has been or could be placed on the challenged statute." *Broadrick* v. *Oklahoma, supra* at 613, 93 S. Ct. at 2916, 37 L. Ed. 2d at 841. The Court further stated:

> "It remains a 'matter of no little difficulty' to determine when a law may properly be held void on its face and when 'such summary action' is inappropriate. (citation omitted.) But the plain import of our cases is, at the very least, that facial overbreadth adjudication is

---

[6] A portion of the Oklahoma statute provided: "No employee in the classified service shall be * * * a candidate for nomination or election to *any* paid public office * * *." (Emphasis added.) Okla. Stat. Ann., tit. 74, §818 (1965).

an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct * * * . To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view that §818 is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied."
*Id.* at 615-16, 93 S. Ct. at 2917-18, 37 L. Ed. 2d at 842.

In determining that the statute was not substantially overbroad, the Court relied on prior interpretations by the state's Attorney General and the state Personnel Board that restricted the scope of the statute to "partisan political activity."

The defendant's reliance on these two cases raises several issues. The first question is whether defendant has standing to challenge the charter provisions on the ground that they are overly broad. The District Court in *Magill* v. *Lynch*, 400 F. Supp. 84 (D.R.I. 1975), *rev'd* 560 F.2d 22 (1st Cir., 1977), Cert. Denied, 434 U.S. 1063, 98 S. Ct. 1236, 55 L. Ed. 2d 763 (1978), in dicta, interpreted *Broadrick* as a denial of standing, and thus a rejection of the application of the overbreadth doctrine where the public employees seeking to raise this issue had engaged in *partisan* political activity, that is, constitutionally proscribable conduct. However, the Court in *Broadrick* clearly stated that the test was whether the challenged statute was "substantially overbroad." Under this test, a defendant who engaged in "hardcore" conduct nonetheless has standing to raise the issue of overbreadth where the restrictions at issue are substantially

overbroad.[7] This test is somewhat circular since it necessitates a consideration of the merits of the overbreadth claim prior to the determination of a party's standing. Thus, in the case at bar, this court must determine whether the charter provisions are substantially overbroad in order to decide whether defendant, who holds *partisan* elective office, has standing. In *Broadrick,* the Court relied on prior interpretations limiting the application of the statute in finding that it was not substantially overbroad. However, in the instant case, no such limiting construction has been placed on these charter provisions.

The second issue is whether the partisan/nonpartisan distinction is pivotal in determining whether a provision restricting the political activities of public employees is overbroad. Strictly speaking, the Supreme Court in *Broadrick* and *Letter Carriers* did not hold that restrictions on the nonpartisan political activities of public employees were unconstitutional, but simply upheld restrictions on partisan political activities, since in both cases, the statutes involved, either as written or as previously interpreted, applied only to partisan political activities. However, other courts have found this distinction critical, holding that while restrictions on public employees' partisan political activities are constitutionally valid, restrictions on nonpartisan political activities are unconstitutional, and thus, restrictions failing to distinguish between the two are overbroad. *See, e.g., Alderman* v. *Philadelphia Housing Auth.,* 496 F.2d 164 (3d Cir. 1974), *Mancuso* v. *Taft,* 476 F.2d 187 (1st Cir. 1973); *Gray* v. *City of Toledo,* 323 F. Supp. 1281 (N.D. Ohio 1971); *Fort* v. *Civil Serv. Comm'n,* 61 Cal.2d

---

[7]Moreover, the First Circuit Court of Appeals in *Magill* v. *Lynch,* No. 76-1532 (1st Cir., July 1, 1977), while finding that the plaintiffs' candidacy for nonpartisan city office could be constitutionally proscribed, remanded the case to the District Court to give plaintiffs an opportunity to show that the restriction was "substantially overbroad." Thus, it is evident that they adopted the test enunciated in *Broadrick* v. *Oklahoma,* 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973), to determine standing.

331, 392 P.2d 385, 38 Cal. Rptr. 625 (1964); *Minielly* v. *State*, 242 Ore. 490, 411 P.2d 69 (1966). *Accord, Mining* v. *Wheeler*, 378 F. Supp. 1115 (W.D.Mo. 1974); *Elder* v. *Rampton*, 360 F. Supp. 559 (D.Utah 1972). *Contra, Magill* v. *Lynch*, No. 76-1532 (1st Cir., July 1, 1977).

The essential question in cases of this type is whether the government has a compelling interest in restricting the political activities of its employees and whether the restriction is narrowly drawn to achieve this purpose. Applying this analysis, several courts, while recognizing the infringement on first amendment rights, have nonetheless upheld prohibitions against dual position-holding that were *not* restricted to partisan offices. *State ex rel. Gonzales* v. *Manzagol*, 878 N.M. 230, 531 P.2d 1203 (1975)(dismissed for want of a substantial federal question); *Commonwealth ex rel. Toole* v. *Yanoshak*, 464 Pa. 239, 346 A.2d 304 (1975); *Haskins* v. *State ex rel. Harrington*, 516 P.2d 1171 (Wyo. 1973); *see also Lay* v. *City of Kingsport*, 454 F. 2d 345 (6th Cir. 1972). However, in each of these cases, except *State ex rel. Gonzales* v. *Manzagol, supra*, the restrictions involved were otherwise narrowly drawn: in *Yanoshak*, the restriction applied only to specific positions; in *Haskins*, only the holding of incompatible positions was prohibited; and in *Lay*, the restriction prohibited municipal officers and employees from contracting with the *city*.

Furthermore, in several cases in which prohibitions against candidacy for both partisan or nonpartisan office were upheld, the prohibitions applied only to specific positions, and thus were narrowly drawn. *Alex* v. *County of Los Angeles*, 35 Cal. App. 3d 994, 111 Cal. Rptr. 285 (1974)(judges of a court of record.); *Boston Police Patrolmen's Ass'n* v. *City of Boston*, 367 Mass. 368, 326 N.E.2d 314 (1975) (police officers); *Ivancie* v. *Thornton*, 250 Ore. 550, 443 P.2d 612 (1968)(mayor, auditor, and certain commissioners of a city). *But cf. Johnson* v. *State*, 280 Minn. 61, 157 N.W.2d 747 (1968)(statute prohibiting state

employees from filing as candidates for compensated public office upheld); *Commonwealth ex rel. Specter* v. *Moak*, 452 Pa. 482, 307 A.2d 884 (1973)(city charter provision prohibiting officers or employees of the city from becoming candidates for public office unless they first resigned upheld.)

Thus, while we believe there would be a compelling governmental interest warranting more narrowly drawn restrictions on dual position-holding, the present charter provisions encompass too broad a scope because they prohibit all city employees from holding *any* elective office, including partisan and nonpartisan, state, federal and local elective office.[8] For example, an out-of-state resident, employed by the city of Woonsocket, who holds elective office in the state or city where he resides, must, under these charter provisions, resign or forfeit his employment with the city. Yet the city's interest in so restricting him appears minimal.[9] It cannot be shown that the well-being of the municipal government requires all of the prohibitions of the present charter provisions. Consequently, we hold that these charter provisions are unconstitutional because of overbreadth.[10]

The defendant's appeal is sustained and the judgment appealed from is reversed.

---

[8]In *Magill* v. *Lynch*, No. 76-1532 (1st Cir., filed July 1, 1977), the court remanded the case for consideration of the plaintiffs' overbreadth claim because this issue had not been addressed in the lower court case. However, we do not remand in the instant case, because the issue of overbreadth was the precise issue raised below, and the city failed to meet its burden of showing that these restrictions served a compelling governmental interest and were narrowly drawn.

[9]However, a charter provision prohibiting city employees from holding office in the same city might be sufficiently narrow.

[10]And, since we find that the charter provisions are substantially overbroad, we also find that the defendant has standing.

MR. JUSTICE DORIS, with whom MR. JUSTICE PAOLINO joins, concurring in part, dissenting in part. I concur with the majority in their holding as to points I, II, III and IV. However, I respectfully dissent from their conclusion as to point V.

The majority state that the first amendment protects freedom of political expression and the right of public employees to run for office. I am in complete agreement with this position. *Broadrick* v. *Oklahoma*, 413 U.S. 601, 93 S. Ct. 2908, 37 L.Ed. 2d 830 (1973). However, I cannot agree with the conclusion reached by the majority that the charter provision before us impinges on these rights. The Woonsocket Charter does not prevent a city employee from engaging in political speech or political activity. It does not prohibit party membership or activities in furtherance of a political party. It in no way prevents a city employee from seeking or running for office. Nor does it prevent the employee from accepting that office, should he be successful in seeking it. There is no mandatory disqualification period. The only condition the charter imposes is that, in order to prevent a conflict of interest situation, the employee may not *both* accept an elective position *and* retain his city employment. In short, it seems to me that this charter provision does not prevent anyone from exercising his first amendment rights to run for office or engage in political activity.

Most of the cases cited by the majority in support of its conclusion that there is a first amendment right at issue in this case actually involve a proscription against *running* for office while holding a position of public employment. Such a situation, where mere candidacy is outlawed, is quite different from the one before us. It involves a much more extensive prohibition and is likely to have a significantly greater "chilling effect" on an employee's right to engage in political expression. Thus, the fact that such a prohibition may run afoul of the first amendment is not determinative of the question at bar.

Furthermore, there is no doubt that the more an activity partakes of the characteristics of "pure speech," the more likely it is that it will be accorded first amendment protections, and, likewise, the more an activity resembles conduct, the less likely that it will be accorded such protection. *Broadrick* v. *Oklahoma, supra* at 617, 93 S. Ct. at 2916, 37 L.Ed. 2d at 840. The kind of political activity associated with a campaign for public office is, in my opinion, much closer to speech than the actual performance of the duties of public office. Therefore, while a restriction on running for office may involve a first amendment issue, that is no reason to conclude that a prohibition against dual office-holding does. Simply because holding an elective office is related to free speech does not mean that it *is* free speech. I cannot agree with the majority's conclusion that the right to hold office is indistinguishable constitutionally from such rights as the right to seek office or engage in political organization.

In addition to cases dealing with restrictions on *running* for office, the majority also cite cases which they say have implicitly "recognized * * * that restrictions on dual position-holding involve first amendment rights." *Ante* at p. 11, citing *Lay* v. *City of Kingsport,* 454 F.2d 345 (6th Cir. 1972); *State ex rel. Gonzales* v. *Manzagol,* 87 N.M. 230, 531 P.2d 1203 (1975); *Commonwealth ex rel. Toole* v. *Yanoshak,* 464 Pa. 239, 346 A.2d 304 (1975); *Haskins* v. *State ex rel. Harrington,* 516 P.2d 1171 (Wyo. 1973). As I read those cases, they do not support such a sweeping conclusion.

First of all, in none of them was the restriction in question held to be in violation of the first amendment. Therefore, any language in those cases which could be construed as supporting a constitutional right to hold office is less persuasive than it would be if the courts had actually found an infringement of free speech.

Moreover, it is far from clear to me that any of those courts even explicitly say that there is a first amendment right to hold office. In *Lay,* the court affirmed a three-judge

District Court ruling which dismissed an employee's first amendment claim on the ground that no substantial federal question was presented. In *Manzagol,* although the court quoted extensively from *Broadrick,* it did not state that there was a first amendment right to hold office. In any case, the particular statute considered there prohibited any employee from being "a *candidate* for nomination or election to any paid office." *State ex rel. Gonzales* v. *Yanoshak, supra* at 233, 531 P.2d at 1206. (emphasis added). As noted previously, that is not the situation before us. In *Yanoshak,* the question was not strictly that of the right to *hold* office, because the statute there also prevented the employee from running for office for two years following the termination of his public employment. And, while *Haskins* says that a public employee "has the right to engage in political expression and run for political office," 516 P.2d at 1173, it does not announce a right to hold office.

By contrast, in *Wilson* v. *Moore,* 346 F.Supp. 635 (N.D. W.Va. 1972), a state constitutional amendment provided that a public employee was not eligible to sit in the state Legislature. In the event that the employee was elected, he was required to choose between his public employment and his elected position, just as defendant would be required to choose in this case. The court specifically found that the right to hold office was not included within the protection of the first amendment.

Accordingly, I would uphold the constitutional validity of the charter on the ground that the first amendment does not guarantee the right to hold an elective office. In view of this, I would not reach the issue of the possible overbreadth of the charter provision in question.[1]

---

[1]I note here, however, that with respect to the overbreadth issue, I fail to see the relevance of the majority's extended discussion of the partisan-nonpartisan distinction. That issue relates to situations where the goal is to restrict the involvement of public employees in political activity such as, for example, in the Hatch Act. It is argued that such a goal may be achieved simply by outlawing participation in *par-*

Of course this is merely an example of the type of harm that the charter provision seeks to prevent. It is certainly not the province of the judiciary to impose its judgment as to what harm can or should be addressed by local, independent municipalities, unless they run afoul of constitutional directives. Since I do not believe that the charter provisions in question restrict first amendment freedoms, I would deny the appeal and sustain the judgment of the Superior Court upholding the charter provisions.

Furthermore, I think that the charter provision is rational both in its goals and in its approach to those goals. There is no question that the city of Woonsocket has a strong compelling interest in promoting both the integrity and the loyalty of its employees. In doing so, it has chosen the approach of forbidding its employees from dual office *holding.* This seems to me to be a rational prophylactic designed to prevent Woonsocket city employees from having divided loyalties.

The application of this provision is particularly clear in the defendant's case. As both a state legislator and a teacher in the local school system, the defendant might be placed in a position where his personal interests as a teacher conflicted with his duty as a legislator (not to mention conflicts in time requirements). He might also be subject to any variety of local pressures, since the state Legislature is the ultimate authority in the field of education, controlling the purse strings and the overall deportment of the local schools

---

*tisan* activities only, since *nonpartisan* activities will not enmesh employees in the political process.

In this case, though, there is no restriction on political activity whatsoever. So far as the charter is concerned, the employee could even be chairman of his party without any problem. It is not the evils of partisan politics that the charter is intended to remedy, but potential conflicts of interest. This being the case, I do not see the point of suggesting, as the majority does, that the charter provision would be acceptable if it were limited to partisan elections. Conflicts may occur just as easily in nonpartisan elective posts as in partisan elective positions. The distinction is not relevant here.

even including the power to abolish local school committees. The abuse of political power that could occur in such a situation is limitless and the citizens of Woonsocket and the General Assembly have the right to proscribe such activity.

*Gerald M. Brenner*, Assistant City Solicitor, for plaintiff.

*Abedon, Stanzler, Biener, Skolnik & Lipsey, Richard A. Skolnik, Francis A. Gaschen* (for Amicus Curiae, Rhode Island Affiliate, ACLU, Inc.), for defendant.