Genevieve **HERVIEUX** et al.

v.

Albert **PAPINEAU** et al.

No. 91–127–Appeal.

Supreme Court of Rhode Island.

June 23, 1992.

Anthony F. DeMarco, Boyer, Reynolds & DeMarco, Providence, for plaintiffs.

Paul A. Anderson, Dennis D. Bossian, Anderson, Anderson & Zangari, Joseph F. Penza, Jr., Olenn & Penza, Providence, for defendants.

## OPINION

MURRAY, Justice.

This is an appeal by the defendant from a Superior Court judgment in favor of the plaintiffs. The defendant city of Pawtucket contends, among other things, that this matter had been settled at the commencement of the trial by virtue of a settlement agreement reached between its agent, the Pawtucket Water Supply Board (WSB), and the plaintiffs. Accordingly, the defendant argues, the trial should not have proceeded to judgment. We agree.

The undisputed facts are as follows. On June 5, 1984, employees of the WSB were performing work on Division Street in the city of Pawtucket connecting water to apartments under construction. After completing their work for the day, WSB employees back-filled the trench they had dug and placed a temporary "cold patch" over the area that had been excavated. They were scheduled to return to the site within twenty-four to forty-eight hours to complete the job.

In the interim nearby residents of the construction area observed that as vehicles passed over the trench they were "bottoming out." Several residents contacted the Pawtucket police department (PPD) to report the perilous condition caused by the trench. The records of the PPD indicate that at approximately 9 p.m. a police officer was dispatched to the site. The officer, however, took no action. At 9:30 the following morning, Alfred Hervieux (Alfred) was driving his moped along Division Street. The defendants concede that Alfred was driving at a reasonable rate of speed. As the moped hit the trench, Alfred was catapulted into the air, landing on his head. Alfred sustained permanent brain damage as a result of the accident.

On June 29, 1984, Genevieve Hervieux (Genevieve), Alfred's wife and legal guardian, filed a claim on Alfred's behalf with the Pawtucket City Council pursuant to the notice provision of G.L.1956 (1980 Reenactment) § 45–15–5.[1] No claim was filed at that time on behalf of Genevieve. In October 1985 Genevieve filed a complaint in the Superior Court against Albert Papineau, in his capacity as finance director of the city

1. General Laws 1956 (1980 Reenactment) § 45–15–5 requires that any person who has a claim against a town or a city must present to the town council of the town or the city council of the city a particular account of the claim. If satisfaction is not made on the claim by the town or city treasurer within forty days after presentment of the claim, the person may commence an action against the treasurer for recovery of the claim.

of Pawtucket. The complaint sought damages for personal injuries sustained by Alfred and for Genevieve's loss of consortium, allegedly caused by the negligence of the employees of the WSB. The plaintiffs also alleged negligence on the part of the employees of the PPD. In response to the complaint the city solicitor filed an answer on behalf of the city.

In October 1986 plaintiffs filed an amended complaint, adding as defendants members of the WSB in their official capacities. Albert Papineau, in addition to serving as finance director of the city, also served as a member of the WSB at the time in question. In response to the amended complaint, the city solicitor filed an answer on behalf of the named defendants, Albert Papineau in his official capacity as finance director of the city and the six members of the WSB in their official capacities. However, because the WSB maintained its own liability insurance for its agents, servants, and employees, the WSB's insurance carrier filed a separate answer to the amended complaint on behalf of the WSB and its members. Although plaintiffs also alleged negligence on the part of the PPD, the PPD was at no time named as a party defendant to the lawsuit, presumably because it is merely an agent of the municipality. The city is a self-insured entity.

Approximately thirty days prior to the commencement of trial, the city solicitor engaged Joseph F. Penza, Jr., as trial counsel to represent the interests of the city of Pawtucket, including the interests of the PPD. The trial commenced on March 12, 1990. On March 16, 1990, in response to specific interrogatories, the jury found in favor of plaintiffs. The jury awarded Alfred $800,729.45 for his injuries and awarded Genevieve $401,200 for her loss of consortium. The jury determined that Alfred did not negligently contribute to his injuries. The jury apportioned 65 percent of the fault to the WSB and 35 percent of the fault to the PPD. The award was subject to interest, which raised Alfred's award to $1,361,240.07 and Genevieve's award to $682,040. Judgment was entered

on April 19, 1990, against the WSB and the PPD. The city filed its notice of appeal on May 4, 1990, and plaintiffs filed their notice of appeal on May 8, 1990.

Central to this dispute is a settlement agreement entered into by plaintiffs and the insurance carrier for the WSB on March 14, 1990, during the course of the trial.[2] On March 13 counsel for the city offered a copy of the settlement agreement to the court to be marked for identification. Upon offering a copy of the agreement to the court, counsel made a motion to dismiss the case on the grounds that there no longer existed a case or controversy because the case had been settled. Counsel argued that there was only one true defendant in the case, the city of Pawtucket, and via its agent, the WSB, the city had settled the case with plaintiffs. Thus there was nothing before the court to be resolved. The trial justice denied counsel's motion to dismiss, and the case went to the jury.

At the conclusion of the presentation of plaintiffs' case, counsel for the city made a motion for a directed verdict on behalf of the city, the WSB, and the PPD. Counsel argued issues of liability on behalf of each agent because, in his opinion, he represented both the WSB and the PPD as agents of the city of Pawtucket. However, he reiterated to the court his position that this case had been disposed of as a result of the forementioned settlement agreement. The trial justice denied the motion for a directed verdict.

On appeal the city of Pawtucket contends that because the case was settled by an agent of the city at the commencement of the trial, there was no longer a case or controversy before the court. Accordingly, the trial should never have proceeded to judgment. The plaintiffs and the insurance carrier for the WSB contend that the agreement reached between plaintiffs and the WSB specifically released only the WSB and its members. They argue that the agreement was expressly made contingent upon the litigation proceeding, and that the agreement expressly reserved

2. See Appendix.

plaintiffs' right to proceed against the city of Pawtucket.

It is important to note that throughout the trial all parties as well as the trial justice conceded that, in essence, there was only one true defendant in this case, the city of Pawtucket. It was agreed that if the jury found in favor of plaintiffs, judgment would be entered against the sole defendant, the city of Pawtucket. At the outset the court noted that the only reason the litigation would proceed as if there were two defendants is because prior to trial the parties had performed discovery and entered into negotiations as if the WSB and the PPD were two separate defendants. This was solely a result of the WSB's separate liability coverage. This litigation proceeding served as a forum to resolve a coverage issue between the WSB's insurance carrier and the city of Pawtucket as self-insurer for its agent, the PPD.

The first issue presented for our consideration is whether a settlement agreement entered into by an agent of a municipality releasing that agent from liability for its negligence in a tort action simultaneously releases the municipality from liability arising from the same action, despite language contained in the settlement agreement expressly preserving the plaintiff's right to proceed against the municipality.

■ We begin our analysis by carefully examining the relationship between the municipal agent and the municipal corporation to determine whether they are in fact the same entity. For guidance we look to the home-rule charter of the city of Pawtucket, the purpose of which is to "set forth the form, substance, obligations, and limitations of the government" of the city (Charter–Preamble). Chapter 7, § 3–709, of the charter sets forth the procedure by which members of the WSB are appointed. The WSB "shall consist of the city finance director, ex-officio, and four other members appointed by the mayor subject to the approval of the city council." *Id.* That section also states that "[e]xcept for the ex-officio member of said board, the members shall hold no *other* municipal office." (Emphasis added.) Chapter 19, § 4–1900, of the charter grants to the WSB a broad range of powers with respect to the "management, supervision, and control of the water collection." The charter also grants to the WSB exclusive care and control of the water works and all waterworks appurtenances owned by the city. In addition, that section grants the WSB broad power to regulate the use of water and to engage in any work that may involve construction involving any highway, turnpike, road, or street, etc. However, the WSB must submit to the mayor and the city council an annual report of all official acts and proceedings. With respect to legal counsel, the charter states that "[t]he city solicitor shall be the legal advisor of [the WSB] and shall have general charge for the city of all law proceedings or suits." Ch. 19, § 4-1900. The charter grants the city solicitor the authority to engage special counsel when necessary. *Id.*

A careful examination of the home-rule charter convinces us that the WSB is an integral part of the municipality and that it is not a separate legal entity. It is clear from the charter that the WSB is merely an agent or a department of the city of Pawtucket and is not, therefore, amenable to suit. The members of the WSB are appointed by the mayor subject to the approval of the city council. In addition, the members, with the exception of the ex officio, are precluded from holding "other" municipal offices. It is important to note that the charter characterizes the members of the WSB as municipal officers. Also, although the WSB has been granted broad powers and duties, it does not enjoy complete autonomy. The WSB is required to submit an annual report to the mayor and to the city council with respect to its official business. Most importantly, the charter specifically appoints the city solicitor as legal advisor to the WSB. Clearly that section anticipates that the WSB and the city shall at all times share the same legal interest, namely, the legal interest of the city of Pawtucket.

This conclusion is in accord with our decision in *Peters v. Jim Walter Door Sales of*

*Tampa, Inc.,* 525 A.2d 46 (R.I.1987). There the parents of a student brought an action against the East Providence School Committee, as well as the manufacturer of the garage-door opener, for the death of the student killed by a falling garage door. *Id.* at 47. The plaintiffs appealed the trial justice's granting of a directed verdict in favor of the school committee. *Id.* In upholding the trial justice's decision, this court held that the school committee was a department of the city and that the city itself, not the department, was the proper defendant. *Id. See also Cummings v. Godin,* 119 R.I. 325, 377 A.2d 1071 (1977).

█ We recognize that it was the intent of the parties to the settlement agreement to treat the WSB and the PPD as two separate entities. It is clear from the agreement that the parties attempted to preserve plaintiffs' action against the PPD and the city of Pawtucket. However, despite the express language of the agreement, we conclude that because the WSB is an integral part of the city of Pawtucket, a release of the WSB accomplished a release of the municipality with respect to plaintiffs' claims.

█ It is clear from the transcript that all parties as well as the trial justice agreed that there was only one true defendant in this case. The confusion in the case seemed to arise from the fact that the WSB maintained its own liability insurance. However, although there may very well exist a coverage issue between the WSB's insurance carrier and the city as self-insurer, that in no way alters the legal status of the municipal corporation. The municipality is the proper defendant in a tort action where the litigant is alleging negligence on behalf of municipal officers, agents or employees.

█ Thus, as of March 14, 1990, the date of the execution of the settlement agreement, this matter was disposed of, and, as such, the litigation proceeding should have been terminated. Absent third-party actions or cross-claims, there was no case or controversy before the trial court. Because this issue is dispositive of this mat-

ter, it is not necessary to reach other issues raised on appeal.

For the reasons given, the city of Pawtucket's appeal is sustained. The judgment appealed from is vacated. The papers of the case are remanded to the Superior Court with directions to record the settlement agreement (Appendix) which on our view of the law extinguished all liability of the city of Pawtucket and its agents, the Pawtucket Police Department and the Pawtucket Water Supply Board, as respects the plaintiffs in the instant case.

## APPENDIX

### SETTLEMENT AGREEMENT

Alfred Hervieux and Genevieve Hervieux, collectively referred to as the "Plaintiffs", are residents of the City of Pawtucket, State of Rhode Island. On June 6, 1984, Alfred Hervieux sustained serious injuries as a result of a motor vehicle accident that occurred on Division Street in Pawtucket, Rhode Island. His wife, Genevieve Hervieux, was subsequently appointed as Guardian of the Estate of Alfred Hervieux by the Probate Court of the City of Pawtucket. Following that accident, the Estate of Alfred Hervieux and Alfred Hervieux's wife, Genevieve Hervieux, initiated a lawsuit in the Providence County Superior Court against the City of Pawtucket. They subsequently joined as parties defendant Albert Papineau, Malcolm Goldenberg, Joseph Box, Edward McCormick and Walter Hourahan, all in their respective capacities as members of the Pawtucket Water Supply Board. That lawsuit is identified as C.A. No. 85–4499.

The Plaintiffs' claims rest on their contention that there was negligence on the part of the agents, servants and employees of the Pawtucket Water Supply Board in the manner in which they excavated and backfilled a trench which extended onto Division Street in the City of Pawtucket. The excavation was done incidental to connecting water service to a building under construction in that area. It is also the Plaintiffs' contention that members of the Pawtucket Police Department were negli-

gent in that after they were advised of the fact that the top of the filled trench had sunk below the level of the roadway and was causing problems for motorists, the police failed to take appropriate measures to warn motorists of the danger or to have the situation corrected.

The facts are essentially uncontroverted. Subsequent to completing the water connection, the excavation was backfilled and capped by employees of the Pawtucket Water Supply Board. Within a short period of time, however, either due to weather, traffic, or other conditions, the backfilled excavation became depressed so that its top was lower than the adjacent roadway. It appears from the evidence that this occurred sometime between 4:30 p.m. and 6:00 p.m. on June 5, 1984.

It is also uncontroverted that after the filled excavation had become depressed, motor vehicles passing over it struck the roadway causing noise and annoyance and that at least two nearby residents placed telephone calls to the Pawtucket Police Department complaining about the problem. On one or more occasions police officers from the Pawtucket Police Department inspected the area in question and apparently determined that the problem was not of sufficient significance to justify either altering traffic flow on Division Street, contacting the Pawtucket Water Supply Board, or contacting some other city agency to perform repairs to the area where the excavation had been.

On the following morning, June 6, 1984, at approximately 9:36 a.m., Alfred Hervieux, while driving a motorbike on Division Street, drove into the depressed area of the roadway at the site of the excavation and, as a result of striking the depression, lost control of his motorbike and was thrown onto the roadway, as a result of which he sustained various injuries. His Estate's claim is for his personal injuries and the claim of his wife is for her loss of consortium, as provided under RIGL 9–1–41, brought about as a result of her husband's injuries.

Subsequent to the investigation into the Plaintiffs' claims, it was concluded by counsel for the Plaintiffs, and conceded by counsel for the City of Pawtucket and the Pawtucket Water Supply Board, that the Pawtucket Water Supply Board was legally not able to be differentiated from the City of Pawtucket. At the time of the accident in question, the Pawtucket Water Supply Board was insured under a policy of insurance issued to it by Northbook Excess and Surplus Insurance Company, Policy No. 22–17872, and a supplemental policy of insurance issued to it by the First State Insurance Company, Policy No. 00953221. The City of Pawtucket's police department is self-insured.

The parties acknowledge that based on the discovery completed to date, and the anticipated trial testimony, that there is a likelihood that the trier of fact could conclude that the accident in question was brought about by the negligence of Alfred Hervieux; by the negligence of employees of the Pawtucket Water Supply Board; by the negligence of employees of the Pawtucket Police Department; or by some comparative negligence on the part of two or more of those three.

It is acknowledged by all parties that the Pawtucket Water Supply Board, its members and its employees are entitled to indemnification under the policies of insurance referred to above, and that the City of Pawtucket's police department and its employees are not entitled to indemnification under the policies of insurance referred to above. Accordingly, it will be requested of the trial justice that specific interrogatories be submitted to the jury where the opportunity will be given to the jury to apportion fault between or among the prospectively responsible parties.

It is further acknowledged that various statutes may be applicable to some or all of the agents of the City of Pawtucket including, but not limited to, particular legislation enacted in relation to the claim of the Estate of Alfred Hervieux; specifically legislation enacted by the General Assembly during the January, 1985 session, Bill No. 85 H 5344. It is further acknowledged that

a dispute exists between whether the actions of some or all of the City of Pawtucket's employees were "governmental" activities or "proprietary" activities.

In light of the various legal and factual issues in dispute, the Plaintiffs, the Estate of Alfred Hervieux and Genevieve Hervieux; the Pawtucket Water Supply Board and its members, agents, servants and employees; and their insurance carriers, Northbrook Excess & Surplus Insurance Company and First State Insurance Company, have agreed to resolve any and all claims the Plaintiffs may have against the Pawtucket Water Supply Board, its members, agents, servants and employees for the aggregate sum of SEVEN HUNDRED FIFTY THOUSAND ($750,000) DOLLARS. (FOUR HUNDRED FIFTY THOUSAND ($450,000) DOLLARS of which is to be paid to the Estate of Alfred Hervieux, and THREE HUNDRED THOUSAND ($300,-000) DOLLARS of which is to be paid to Genevieve Hervieux). It is acknowledged that this Agreement does not effect the Plaintiffs' right to proceed against the City of Pawtucket, its police department, or other officials relative to their claims.

Based on the ultimate outcome of the litigation, an agreement has been reached concerning the disposition of any sums which may be recovered from the City of Pawtucket as a result of the negligence of any of its agents, servants and employees *with the express exception of the Pawtucket Water Supply Board and its members, agents, servants and employees.*

The agreement is as follows:

1. The first $250,000 of any sums recovered from the City of Pawtucket will be paid to the insurers of the Pawtucket Water Supply Board without reduction for attorney fees.

2. Any net sums recovered from the City of Pawtucket between $250,000 and $750,000 will be split, after attorney fees, on a 50/50 basis between the Plaintiffs and the insurers of the Pawtucket Water Supply Board.

3. Any sums recovered by the Plaintiffs from the City of Pawtucket in excess of $750,000 will be retained by the Plaintiffs.

Accordingly, the Plaintiffs, in consideration of the guaranteed payment of the total aggregate sum of SEVEN HUNDRED FIFTY THOUSAND ($750,000) DOLLARS, (FOUR HUNDRED FIFTY THOUSAND ($450,000) DOLLARS of which is to be paid to the Estate of Alfred Hervieux, and THREE HUNDRED THOUSAND ($300,-000) DOLLARS of which is to be paid to Genevieve Hervieux), to be paid to them by the insurers of the Pawtucket Water Supply Board within two (2) weeks after the completion of the trial, regardless of the final outcome of the litigation, do hereby expressly remise, release and forever discharge the Pawtucket Water Supply Board, its members, agents, servants and employees, as well as its insurance carriers, Northbrook Excess & Surplus Insurance Company and First State Insurance Company, from any and all obligations any or all of them may have to the Plaintiffs in excess of the agreed upon SEVEN HUNDRED FIFTY THOUSAND ($750,000) DOLLAR aggregate settlement.

/s/ <u>Genevieve Hervieux, Guardian</u>
Estate of ALFRED HERVIEUX,
By and through his Legal Guardian,
Genevieve Hervieux
/s/ <u>Genevieve Hervieux</u>
GENEVIEVE HERVIEUX
STATE OF RHODE ISLAND
COUNTY OF <u>Prov.</u>

On the <u>14th</u> day of March, 1990, before me personally appeared the Estate of Alfred Hervieux, by and through his legal guardian, Genevieve Hervieux, and Genevieve Hervieux, to me known to be the person who executed the foregoing Agreement as guardian and individually. She acknowledged that she executed this Agreement as her free act and deed.

/s/ [signature]
NOTARY PUBLIC
/s/ <u>Paul A. Anderson</u>
PAUL A. ANDERSON
Attorney for the Pawtucket Water Supply Board, its members, agents, servants

and employees and their insurance carriers, Northbrook Excess and Surplus Insurance Co. and First State Insurance Co.

STATE OF RHODE ISLAND
COUNTY OF <u>Prov.</u>

On the <u>14th</u> day of March, 1990, before me personally appeared Paul A. Anderson, to me known, who executed the foregoing Agreement. He acknowledged that he executed this Agreement as representative of his clients, was expressly authorized to do so, and did so as his free act and deed.

/s/ [Signature]
NOTARY PUBLIC