## Opinion to the Governor.

JULY 17, 1941.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

July 17, 1941.

To His Excellency, J. Howard McGrath,
Governor of the State of Rhode Island
and Providence Plantations.

We have received from your excellency a request for our written opinion, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, upon certain questions of law that relate to pub-

lic laws 1941, chapter 1040, an act passed by the general assembly at its January Session of 1941 in amendment of public laws 1939, chapter 660, as amended.

These questions are stated in your letter as follows:

"1. Does the language of Section 1 of the amending act prohibit the appointment of members of the General Assembly as original members of the said Board of Elections?

"2. Does the language of Section 1 of the amending act prohibit the appointment of members of the General Assembly to membership on the said Board of Elections subsequent to original appointments?

"3. In the event that your answer to either of the two previous questions is in the negative, what will be the legal effect of such an appointment with respect to the right of the appointee to serve on the Board of Elections while he is a member of the General Assembly or before a successor to his seat has been duly elected and qualified?"

In compliance with our duty under said article of amendments to the constitution, we have the honor to submit our opinion.

The first paragraph of section 1, chap. 1040, P. L. 1941, hereinafter called the amending act, merely provides for the amendment of P. L. 1939, chap. 660, as amended. The second paragraph under section 1 is designated "Sec. 222" and the first sentence thereof reads:

"There shall be, independent of every other department and agency of this state, a board of elections, consisting of 4 qualified electors of this state, of outstanding honesty and ability, 2 of whom shall be republicans and 2 of whom shall be democrats, and except in the case of original members of said board, none of whom shall hold any other public office or public employment (but no person shall be disqualified solely because he is a notary public) who, except in the case of original members of said board, shall be appointed by the governor or elected by the senate as hereinafter provided."

Following this sentence, all in the same paragraph, appear various provisions relating to appointments of members who shall be appointed and serve after the expiration of terms of the original members; the terms of subsequently appointed members; the method of engagement, salary, powers, duties, appropriation, and the number required for a quorum and necessary vote. The provision for appointment of original members is not made until later, namely, in sec. 2 of the amending act. The remaining three sections do not specifically relate to the questions before us.

Question 1 relates only to the power of appointment, as distinguished from the right of an appointee to hold his office; and further, it relates solely to the appointment of the original members of said board of elections and not to those who might be later appointed to fill any vacancy or to serve upon the expiration of the term of the original appointees.

The language and order of the act employed by the draughtsman are somewhat unusual and are not free, in certain parts, from ambiguity and resulting confusion. Thus, it can be argued that a literal and grammatical construction of the language of the above-quoted first sentence would defeat the operation of the act, because, upon such construction, if adopted, there would be no provision for the appointment of any original members of said board either by the governor or by the senate. However, we are bound by recognized rules of statutory construction to give effect, if reasonably possible, to the general purpose of the amending act and to interpret the language thereof so as not to lead to inconsistent or absurd results. *Morgan* v. *Allen,* 51 R. I. 228; *Moretti* v. *Division of Intoxicating Beverages,* 62 R. I. 281; *Racine* v. *Tenth District Court,* 39 R. I. 475.

Therefore, to prevent inconsistencies and to give effect to the purpose of the legislature, as disclosed by a reading of the whole act, the provisions should be construed as vesting the governor with power to appoint the original members of the board of elections.

Having in mind such a construction of sec. 222 under section 1, and having in mind that question 1 refers only to the power of appointment of original members, as distinguished from the right of the original appointees to hold and to serve in such office, we have carefully examined the language of section 1 and the provisions of the whole act. We have found no language in section 1 or elsewhere in the act that expressly prohibits the appointment of any member of the general assembly as an original member of said board of elections, as distinguished from the right of such appointee to lawfully hold that office and at the same time remain a member of the general assembly. Nor have we found any language in any part of the act in question which, by necessary implication, requires a construction that would prohibit such an appointment by the governor of a member of the general assembly as an original member of said board. Therefore, we are of the opinion that question 1, restricted to the mere appointment as above set forth, should be answered in the negative.

Having answered the first question in the negative, the next question logically and naturally is that propounded by question 3. This question relates not to mere appointment of a member of the general assembly as an original member of said board, but to the right of such an appointee lawfully to hold that office while also a member of the general assembly. It further suggests two possible situations in connection with the right of such a member of the general assembly, if appointed, to lawfully hold office as an original member of said board: First, when such appointee has not resigned from the general assembly; and second, when he has resigned therefrom but his successor has not been duly elected and qualified. However, both of these subdivisions of question 3 fall within the same category, for our purposes here, on the authority of *In re Election of Sheriff*, 41 R. I. 79. In that case this court held that a duly elected member of the general assembly remains a member thereof until his successor therein is duly elected and qualified.

Therefore, the gist of the third question is whether a member of the general assembly, if appointed by the governor as an original member of said board of elections, may lawfully hold, at one and the same time, both his office as a member of the general assembly and as an original member of said board. The answer to this question depends upon the intention of the legislature as found in the language of the amending act. As indicated previously, the language, scheme and order thereof employed by the draughtsman, are not free, in places, from doubt and difficulty. Conceivably, there are different constructions which, by inference, could raise serious problems in matters of great importance such as elections. However, there are some provisions which leave nothing to inference and clearly express the legislature's intent.

A reading of the whole act discloses a clear intention to remove said board of elections as far as possible from any influence by or interference from or dependence upon any other department or agency of the government; and to insure the integrity and impartiality of each member of said board. The act shows clearly that the legislature desired to place more drastic restrictions upon the qualifications of the members of said board than would have been required by the principles of common law or the settled law of this state.

Under the common law which has been expressly recognized and applied by this court, there are certain well-established grounds of incompatibility between different offices which have been held to be a bar to the holding of certain offices by one and the same person at the same time. *State ex rel.* v. *Goff*, 15 R. I. 505. In that case this court held that the office of justice of a district court was incompatible with the office of deputy sheriff and that by qualifying in the latter office the incumbent had surrendered the former office. The test of incompatibility therein stated and sanctioned by respectable authority was the character and relation of the offices in question, as where one is subordinate to the

other and subject in some degree to its revisory power; or where the functions of the two offices are inherently inconsistent and repugnant. As was earlier said by this court: "The question of incompatibility is to be determined from the nature of the duties of the two offices, and not from a possibility, or even a probability, that the defendant might duly perform the duties of both." *State* v. *Brown,* 5 R. I. 1, 11.

Judged by this test, it appears clear that the offices of a member of the general assembly and a member of the board of elections are incompatible for the reason that the decisions of the board on the matter of elections, in so far as they relate to members of the general assembly, are subject, in some degree at least, to the revisory power of each house of the general assembly. This is so because, under the constitution, each body of the general assembly is the final judge of the election and qualification of its members.

It is to be presumed that the principles of the common law as recognized by the decisions of this court, above referred to, were known to the general assembly when it enacted the present amending act. But the general assembly evidently intended to place even more stringent limitations upon the general qualifications of members of said board, and it expressly stated them.

In the very beginning, by express and comprehensive language, it discloses its intention to make this board independent of all other departments and agencies of state government. The amending act did not stop with the prohibition against the holding by a member, at the same time, of any other public office in state government, or even of any public office the duties of which were in some degree incompatible; but it added in clear terms a prohibition against the holding by such a member of any other public office or even of any other public employment. Thus it is evident that, in connection with the holding by a member of said board of another public office, the legislature intended in this act to greatly extend the prohibitions beyond those which had been

previously recognized and applied by the above-mentioned decisions.

In addition to this comprehensive prohibition, it apparently intended to insure the independence and impartiality of the members of the board in the conduct of official duties that are so important and necessary to the full, free and effective exercise by the people of the electoral franchise. In furtherance of this intention and apparently to impress upon each member of the board the solemn and significant character of his office, the act provides an unusual form of engagement by such member before the supreme court, and not merely before a single justice thereof, or before some other competent officer to administer an oath. We know of no other public officer of this state who is obliged to take his oath of office in a like solemn manner. The only other engagement of public officers resembling it is that of the induction into office of the governor and other general officers of the state on inauguration day before the senate and house of representatives assembled in grand committee. General laws 1938, chap. 301, § 30.

Having provided for such purposes, qualifications and method of engagement expressly, rather than leaving any of them to mere inference, the question arises whether the legislature clearly intended to immediately suspend their operation and effect, as to original members of said board. If the general assembly did intend by this amending act to make an exception of some kind in favor of original members, then two other questions immediately arise. First, did the legislature, in the light of the decided cases, *supra,* intend to completely suspend *all* such prohibitions so that an original member could also hold another public office, even though the two offices were essentially incompatible? Or, second, did it intend to recognize the principle of incompatibility, as stated in those cases, and to exempt an original member only so as to permit the holding by him of another public office or employment which was not incompatible?

It seems that the clause "except in the case of original members of said board . . . as hereinafter provided", appearing in the first sentence of sec. 222, was possibly intended by the draughtsman to lay the foundation for a provision to be later written in the act by which original members might be exempted to some extent. However, there is no other provision in the act which expressly, or by necessary inference, explains how far or to what extent such an exception, if any were intended, was to apply to original members of said board. In fact, nowhere else in the amending act is this clause or the subject matter of any contemplated exception referred to independently of sec. 222.

In view of this situation, we cannot determine, without guessing, whether the legislature intended to completely suspend all provisions and prohibitions in favor of original members, thus to modify the settled law so as to permit the holding by them of two incompatible offices; or whether it intended to except such members merely from the additional prohibitions which were added by the amending act, thereby preventing the holding by a member of any other public office or employment, even though the two were not incompatible.

Moreover, if any inference were proper in the circumstances, salutary and established rules of statutory construction would dictate that we adopt that construction which would not set aside the law as held in the cases, *supra,* which prohibited the holding of incompatible offices at the same time, unless other language in the amending act showed expressly, or by necessary implication, that the legislature intended to change that law by exempting therefrom the original members of this board. As stated, such an intent to change that law is not found expressly anywhere in the amending act, nor is it found by necessary implication. If the legislature had so intended, we think that it would have made such an exception in favor of original members, in language as clear as that by which it had previously stated

the general purpose of the act and the general qualifications of members of the board to hold the office.

Under all the circumstances as they are presented to us, it is our opinion that a member of the general assembly is, on the authority of *State ex rel.* v. *Goff* and *State* v. *Brown, supra,* the holder of a public office that is incompatible with the office of an original member of said board, and that the language of the amending act has not provided, either expressly or by necessary implication, that such a member of the general assembly, if appointed as an original member of said board, may lawfully hold and serve in that office while at the same time remaining a member of the assembly. That is not to hold, however, that the amending act prohibits a member of the general assembly, if appointed as an original member of said board of elections, from properly resigning his office in the general assembly and later holding and serving in the office as an original member of the board of elections, as soon as his successor in the general assembly shall have been duly elected and qualified.

From what we have said in answer to questions 1 and 3, it does not appear to us that the situation contemplated by question 2 would ever reasonably arise. We therefore respectfully submit that question 2 does not require a more specific answer at this time.

EDMUND W. FLYNN<br>
WILLIAM W. MOSS<br>
ANTONIO A. CAPOTOSTO<br>
HUGH B. BAKER<br>
FRANCIS B. CONDON