394 A.2d 1355.

## ADVISORY OPINION TO THE GOVERNOR OF THE STATE OF RHODE ISLAND.

### DECEMBER 8, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

To His Excellency J. Joseph Garrahy
  Governor of the State of Rhode Island
    and Providence Plantations

In fulfullment of their constitutional obligation to advise

you on questions of law which relate to your official duties as the head of a coordinate branch of government, *Opinion to the Governor*, 109 R.I. 289, 292, 284 A.2d 295, 296 (1971), the undersigned forward this communication to you as a reply to your letter of September 7, 1978, in which you posed the following inquiry:

> "If the Governor appoints a Justice of the District Court to fill a vacancy in the Superior Court, when the Senate is not in session, does the execution of the engagement of office in accordance with Section 8-3-1 of the General Laws, 1956 (1969 Reenactment as amended) by said Justice prior to Senate confirmation create an immediate vacancy in the District Court?"

We believe that acceptance of such an appointment would unquestionably create an immediate vacancy on the District Court regardless of whether Senate confirmation becomes an actuality.

At the outset we note that G.L. 1956 (1969 Reenactment) §8-2-2 prescribes the manner in which vacancies on the Superior Court are to be filled.[1] The statute provides that permanent appointments to fill vacancies shall be made by the Governor, subject to confirmation of those appointments by the Senate. A person appointed by the Governor while the Senate is in session must therefore await Senate confirmation before he may authoritatively enter upon the duties of a Superior Court justice. Section 8-2-2 goes on to provide, however, for the possibility that a vacancy might occur on the

---

[1]General Laws 1956 (1969 Reenactment) §8-2-2 reads, in part, as follows:

> "The justices of the superior court shall hold office during good behavior and any vacancy in said court shall be filled as follows: In case there be a vacancy in the office of presiding justice or of an associate justice of said court while the senate is in session, the governor shall appoint some person to fill said vacancy, and submit his appointment to the senate for confirmation."

Section 8-2-2 then prescribes the time frame within which the Senate must act on each appointment to the Superior Court, as well as certain of the factors that the Senate should take into account in reaching its decision.

Superior Court at a time when the Senate is not in session.[2] The grant to the Governor of the power to make recess appointments is explicit and recognizes that offices necessary to the sound functioning of the government should not, once vacated, remain unfilled. Of course, §8-2-2 also requires that the Governor make an appointment in the manner required for permanent appointments once the Senate reconvenes.[3]

Today's response to Your Excellency's question is, in its simplest terms, a determination that an individual may not hold two incompatible judicial offices at the same time, even when one is only a recess appointment. Although no specific constitutional or statutory language applies to the situation before us, the problem is governed squarely by a common-law rule steadfastly adhered to by the Rhode Island Supreme Court and not open to serious question. To repeat what the court said long ago:

"It is well settled that when a person accepts an office

---

[2]Section 8-2-2 provides:

"In case the senate is not in session, the governor shall appoint some person to fill said vacancy until the senate shall next convene, when the governor shall make an appointment as hereinbefore provided."

[3]See notes 1 & 2 supra. Clearly, then, the question posed does not involve the temporary assignment of a District Court judge to the Superior Court pursuant to the provisions of G.L. 1956 (1969 Reenactment) §8-15-3. That statute permits the Chief Justice of the Supreme Court to assign a judge of the District Court to sit in the Superior or Family Courts "for a temporary period of no longer than thirty (30) calendar days * * *." The express purpose of such an assignment is solely "to aid in the prompt disposition of judicial business * * *." See section 8-15-3. In such a case, therefore, the District Court judge is neither "appointed" to another court nor does he take a new engagement of office; consequently, he remains a judge of the District Court throughout any tenure on either the Superior or Family Court. See Hutchins v. City of Des Moines, 176 Iowa 189, 201, 157 N.W. 881, 885-86 (1916), wherein the Supreme Court of Iowa addressed an analogous problem and concluded that

"the district judge [is not] thereby appointed to another office. He is required as district judge to render a specified service * * *. The judge of one court, by becoming a member of or presiding as another court, does not acquire a new office, nor change either court, but, merely by virtue of his office, acts ex officio in presiding over another tribunal."

See also Dukes v. State, 11 Ind. 557, 563, 71 Am. Dec. 370, 376 (1859).

incompatible with one which he then holds, he thereby impliedly resigns or vacates his former office." *State ex rel. Metcalf* v. *Goff*, 15 R.I. 505, 506, 9 A. 226, 226 (1887).

*See also Opinion to the Governor*, 67 r.I. 197, 201, 21 A.2d 267, 270 (1941); *State* v. *Brown*, 5 R.I. 1, 9-10 (1857) ("a virtual resignation of the [prior] office"). For a more contemporary restatement of the same principle, see *McCabe* v. *Kane*, 101 R.I. 119, 122, 221 A.2d 103, 105-06 (1966).

The theory behind the rule of implied resignation can be thought of as one of election, though not properly one of individual choice. There is no room for an actual election, unless it exists simply in choosing to accept a second, incompatible office. Once that act is done, the law implies an immediate resignation of the prior office, accompanied by a surrender of all claim and title to that office.[4] The rule that one automatically, and without notice, vacates the prior office upon acceptance of the second is designated to serve firm public policy objectives, not the least of which is to ensure continuing certainty with regard to who holds public office. In the words of the Supreme Judicial Court of Maine:

> "Where one has two incompatible offices, both cannot be retained. The public has a right to know which is held and which is surrendered. It should not be left to chance, or to the uncertain and fluctuating whim of the office-holder to determine. The general rule * * * is one certain and reliable as well as one indispensable for the protection of the public." *Stubbs* v. *Lee*, 64 Me. 195, 198, 18 Am. Rep. 251, 253 (1874).

---

[4]The complete nature of the forfeiture worked by the common law is demonstrated by *State ex rel. Metcalf* v. *Goff*, 15 R.I. 505, 508-09, 9 A. 226, 228 (1887), wherein, after finding the offices of justice of the District Court and deputy sheriff incompatible under the common law, the court refused to attach any significance to the officeholder's resignation of the second, incompatible office. As the court stated:

> "If the office of justice became vacant the respondent could not put himself back into it by his own act. The vacancy can only be filled in the way provided by law." 15 R.I. at 509, 9 A. at 228.

In *DeLuca* v. *Rhode Island State Board of Elections,* 119 R.I. 59, 63, 376 A.2d 326, 328 (1977), we as well had, for somewhat different reasons, occasion to observe that "public policy requires that there be no uncertainty as to who is or who is not a public officer * * * ."

The key question remaining for our consideration is, of course, whether the offices of District Court judge and Superior Court justice are in fact incompatible; only when natural incompatibility exists will the common-law rule operate and thereby relieve the justice of his former position. *See, e.g., McCabe* v. *Kane,* 101 R.I. 119, 221 A.2d 103 (1966); Annot., 8 L.R.A. (n.s.) 1107, 1107 n. (1907). In addition, examination of this question will reveal precisely why, in the first instance, there has long existed this rule forbidding the holding of incompatible offices. As the court stated in *Cummings* v. *Godin,* "[t]he simultaneous holding of more than one public office has been a traditional subject of public concern." 119 R.I. 325, 332, 377 A.2d 1071, 1074 (1977).

The standards by which to judge common-law incompatibility in the absence of a controlling statutory or constitutional provision were supplied long ago and have been reaffirmed often over the years.

> "In cases where the question of incompatibility of offices has arisen, independently of statutory or constitutional provision, two rules are generally recognized: *First.* That incompatibility does not depend upon the incidents of the offices, as upon physical inability to be engaged in the duties of both at the same time. * * *
>
> "*Second.* The test of incompatibility is the character and relation of the offices: as where one is subordinate to the other, and subject in some degree to its revisory power; or where the functions of the two offices are inherently inconsistent and repugnant. In such cases it has uniformly been held that the same person cannot hold both offices." *State ex rel. Metcalf* v. *Goff,* 15 R.I. 505, 507-07, 9 A. 226, 226-27 (1887), *quoted in, e.g.,*

> *McCabe* v. *Kane,* 101 R.I. 119, 123, 221 A.2d 103, 106 (1966).

*See also Cummings* v. *Godin,* 119 R.I. 325, 333 n.2, 377 A.2d 1071, 1075 n.2 (1977); *Opinion to the Governor,* 67 R.I. 197, 201-02 21 A.2d 267, 270 (1941).

When we apply these standards to the situation before us, there seems little question but that the two judicial offices are in fact incompatible. Even a brief look at the relationship established by the Legislature between the District and Superior Courts reveals clearly that "one is subordinate to the other and subject in some degree to its revisory power." Section 12-22-1 of the General Laws provides for appeals from the District Court to the Superior Court in criminal cases other than violations, while §9-12-10 provides for appeal of civil cases to the Superior Court. The official involvement of Superior Court justices in matters once before the District Court is thus conceived by the Legislature as properly the norm and gives rise in our opinion to a direct conflict of duties, *see McCabe* v. *Kane,* 101 R.I. 119, 123-24, 221 A.2d 103, 106 (1966), where a single person possesses the authority of both offices simultaneously. The right to interfere in and to revise the determinations of the District Court would be in this case theoretically no less than the power to sit in judgment of one's own acts,[5] a clear impropriety under the common law. *See State ex rel. Metcalf* v. *Goff,* 15 R.I. 505, 507, 9 A. 226, 227 (1887), *citing Cotton* v. *Phillips,* 56 N.H. 220, 223 (1875). As the rule no doubt suggests, it is of no matter that a public officer of high personal integrity

---

[5]It is true that G.L. 1956 (1969 Reenactment) § 8-3-5 provides for the disqualification of a Superior Court justice from participation in any cause "in which he has presided in any inferior court." Section 8-3-5, though of course applicable in all cases where conflict of such a type arises, cannot be read to remove the natural incompatibility otherwise existing between the offices of District Court judge and Superior Court justice. Rather, the spirit of §8-3-5 makes clear a legislative intendment to address possible conflicts arising, and soon passing, in cases of judicial officers actually appointed permanently to higher judicial posts, or in cases arising under the provisions of §8-15-3 (providing for temporary assignment of District Court judges to the Superior and Family Courts by the Chief Justice of the Supreme Court).

would certainly avoid the conflicts inherent in the situation.[6] To the contrary,

> "[t]he law is adapted not to individual and exceptional cases, but to human nature as it ordinarily exhibits itself; and it cannot afford to dispense with the well-known guards of common policy for the chance of now and then stumbling upon a bright example, or producing a startling effect. The question of incompatibility is to be determined from the nature of the duties of the two offices, and not from a possibility, or even a probability, that the [officer] might duly perform the duties of both." *State* v. *Brown,* 5 R.I. 1, 10-11 (1857), *quoted in Opinion to the Governor,* 83 R.I. 370, 374-75, 116 A.2d 474, 475-76 (1955).

In reaching a determination that there exists a vacancy on the District Court as of the moment of the judge's qualification for and engagement of the office of Superior Court justice, we recognize that there will have been in this case an actual *appointment to the second office.* The objection might be made that one does not actually "hold" the office of Superior Court justice until Senate confirmation has been obtained. While it is true that the Rhode Island Supreme Court has never considered the precise nature of the authority of an interim judicial appointee, we agree with those state and federal courts that view the authority of a recess appointee or judge pro tempore as coextensive with

---

[6]Indeed, in *State ex rel. Metcalf* v. *Goff,* 15 R.. 505, 9 A. 226 (1887), the court stated that " '[t]he admitted necessity of such a course is the strongest proof of the incompatibility of the two offices ∗ ∗ ∗.' " 15 R.I. at 508 9 A. at 228, quoting *State* v. *Brown,* 5 R.I. 1, 11 (1857). The court in *Goff* also observed that the

> "incongruity of [the offices of justice of the District Court and deputy sheriff] in one person is manifest. To say nothing of the breach of dignity and propriety which would result from an attempt to perform the duties of judge and officer together, the power of a judge to pass upon the sufficiency of an officer's return, and to allow or to disallow his fees, are quite sufficient to bring these offices within the recognized rule of incompatibility, by reason of the judicial supervision of one office and the accountability of the other." 15 R.I. at 507-08, 9 A. at 227.

that of regular appointees to the court involved. *See, e.g., United States* v. *Teresi,* 484 F.2d 894, 898 (7th Cir. 1973); *United States* v. *Allocco,* 305 F.2d 704, 709 (2d Cir. 1962), *cert. denied,* 371 U.S. 964, 83 S. Ct. 545, 9 L. Ed. 2d 511 (1963); *People ex rel. Adamowski* v. *Trampe,* 20 Ill. 2d 144, 148, 169 N.E.2d 338, 340 (1960); *Roberts* v. *State,* 268 Ind. 127, 129, 373 N.E.2d 1103, 1105 (1978); *Harward* v. *Harward,* 526 P.2d 1183, 1184 (1974). The problem presented by Your Excellency makes it clear that the interim appointee will have qualified and executed the engagement required of all Superior Court justices. Certainly, the Legislature intended that as of the moment the justice should be empowered to exercise all of the authority of his office; given that §8-2-2, pursuant to which an interim appointment is made, prescribes no other requirements and postpones further formalities until the Senate reconvenes, no other reading of the statute is possible. Any suggestion that this interim appointee would not "hold" the judicial office as authoritatively as do all other Superior Court justices is, therefore, untenable. The sole, but decisive, difference between recess appointees to the Superior Court and permanent members of that court is that the former must await Senate confirmation before beginning a tenure of normal duration, that is, a tenure lasting "during good behavior." *See* G.L. 1956 (1969 Reenactment) §8-2-2.[7]

Similarly, the fact that a recess appointment confers upon the appointee all of the powers and duties incident to the office of Superior Court justice compels the conclusion that

---

[7]We would observe that the court was presented with a somewhat analogous situation in *Casey* v. *Willey,* 89 R.I. 87, 91, 151 A.2d 369, 371 (1959), where, in considering a statutory provision for the appointment of a clerk pro tempore of the Superior Court, the court stated:

"It is clear from a comprehensive appreciation of the several and various contingencies which might arise, so as to leave the court without someone to function in the absence of the clerk, that the legislature intended to provide an expeditious method for the appointment of a temporary incumbent. Such an incumbent, however, although clothed with the authority to perform the functions and duties of the clerk and receiving the emoluments therefor during his tenure, would be without permanent status."

the common-law rule operates despite the temporary nature of the appointment. We recognize the possibility that the appointee may in fact be refused confirmation by the Senate, but find that fact irrelevant to our ultimate determination. Indeed, we frankly do not see how the case of a temporary appointment could satisfactorily be distinguished from the case of a permanent one. Again, in the former instance as much as in the latter, the appointee may lawfully enter upon the discharge of judicial duties; when he does so, he will face precisely those same conflicts that we addressed in full above. When there exists the natural incompatibility required by the common law, the necessary conclusion is that the rationale behind the rule — and therefore the rule — operates.

Thus it is that we answer your inquiry in the affirmative because a District Court judge who, while the Senate is not in session, accepts a gubernatorial appointment to the Superior Court by executing the engagement of office has impliedly resigned the office of judge of the District Court.