William **FELKNER**

v.

**CHARIHO REGIONAL SCHOOL
COMMITTEE.**

No. 2009–23–M.P.

Supreme Court of Rhode Island.

April 7, 2009.

Nicholas Gorham, Esq., North Scituate, Christopher Anderson, Esq., for Plaintiff.

Jon M. Anderson, Esq., Providence, for Defendant.

Present: GOLDBERG, Acting C.J., SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Acting Chief Justice GOLDBERG, for the Court.

This is a petition in equity in the nature of quo warranto. William Felkner (Felkner or petitioner) brings this action in quo warranto, seeking a determination by the Supreme Court that he rightfully has retained the title of school committee member of the Chariho Regional School Committee despite also having taken the oath of office as councilman for the Town of Hopkinton. This case came before the Supreme Court for oral argument on March 9, 2009; Felkner advanced the argument that he lawfully can hold both positions simultaneously. After considering Felkner's contentions, we conclude that upon assuming the position of town councilman for the Town of Hopkinton, Felkner, in effect, resigned his seat on the Chariho Regional School Committee. We reach this conclusion because multiple officeholding specifically is prohibited by the Hopkinton Town Charter. As well, we

decide that the simultaneous holding of these two positions violates the long-recognized common-law doctrine of incompatibility.

# I

## Facts and Travel

The facts giving rise to the instant dispute are simple and undisputed. On November 7, 2006, Felkner was elected to the Chariho Regional School Committee for a four-year term. On November 18, 2006, Felkner took the oath of office and swore to "discharge the duties of said office and to exercise all the powers thereto belonging to law." Two years later, Felkner was elected and took the oath of office for a two-year term on the Hopkinton Town Council. When the Chariho Regional School Committee met on November 18, 2008, Felkner took his seat as a committee member. During the meeting, the committee sought to address Felkner's status, and committee member George Abbott moved to table, until December 9, 2008, the issue of whether Felkner retained his office on the Chariho Regional School Committee by virtue of his new position on the Hopkinton Town Council. Despite being asked to sit with the public and to abstain from participating in the executive session of the school committee meeting, Felkner refused. Because of Felkner's continued presence during the executive session, the meeting was opened to the public. Eventually the school committee successfully voted to have Felkner escorted out of the building.

At the meeting on December 9, 2008, Felkner and his attorney appeared in or-der to argue that Felkner remained a member of the Chariho Regional School Committee notwithstanding his election to and engagement of the office of town councilman. Counsel for the school committee explained that the Rhode Island Supreme Court was vested with exclusive jurisdiction to hear Felkner's complaint. Unpersuaded, Felkner filed a complaint in the Superior Court, seeking an order declaring that the Chariho Regional School Committee lacked the authority to determine that he was not a member of that body.[1] In response, the Chariho Regional School Committee filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted.

Meanwhile, on January 13, 2009, the Chariho Regional School Committee decided, in a seven-to-two vote, to accept Felkner's resignation from the committee by virtue of his membership on the Hopkinton Town Council. Three days later, the Superior Court ruled that it lacked subject-matter jurisdiction to entertain Felkner's request for declaratory relief to return him to his seat on the school committee.[2] Felkner then filed the instant petition in equity in the nature of quo warranto with this Court.

# II

## Analysis

■ Before this Court, Felkner argues that he has set forth a legally cognizable cause of action in quo warranto. Felkner contends that the Chariho Regional School Committee wrongfully excluded him from

---

1. William Felkner also alleged in his complaint a violation by the Chariho Regional School Committee of the Open Meetings Act, G.L. 1956 chapter 46 of title 42.

2. The Superior Court ruled that although it dismissed Felkner's declaratory-judgment action for lack of subject-matter jurisdiction, it nevertheless retained jurisdiction to hear Felkner's allegation under the Open Meetings Act.

membership on the school committee. The committee maintains that when Felkner assumed his office on the Hopkinton Town Council, he resigned his seat on the school committee by operation of law, in accordance with the plain language of the Hopkinton Town Charter, as well as the common-law doctrine of incompatibility.

We recognize that "an action to test one's title to office is an action in quo warranto," whereby one may bring a petition in equity in the nature of quo warranto, asserting his or her right to the office at issue. *McKenna v. Williams*, 874 A.2d 217, 228, 229 (R.I.2005). *See also Fargnoli v. Cianci*, 121 R.I. 153, 161, 397 A.2d 68, 72 (1979) ("A quo warranto writ, or an information in the nature of quo warranto, is a common law remedy or proceeding whereby the state directs an individual to show by what warrant he holds public office and to oust him from its enjoyment if the claim is not well founded."). "A successful petitioner obtains a decree which not only ousts the respondent from office but also declares that the petitioner is the rightful holder of the office in dispute." *Fargnoli*, 121 R.I. at 162, 397 A.2d at 73. To prevail, the petitioning party must rely on the strength of his or her own title and "bears the burden of establishing that he or she was illegally removed." *Seemann v. Kinch*, 606 A.2d 1308, 1310 (R.I.1992).

Jurisdiction over an equitable quo warranto claim, when brought by a private citizen rather than the Attorney General on behalf of the state, is vested exclusively in the Supreme Court. *McKenna*, 874 A.2d at 229. *See also* G.L. 1956 § 10–14–1 ("The title to any office, to determine which the writ of quo warranto lies at the common law, may be brought in question by petition to the [S]upreme [C]ourt.").

Because Felkner claims right and title to the office of member of the Chariho Regional School Committee, pursuant to § 10–14–1 the action properly is before us, and this Court has original jurisdiction over the petition.[3]

With this in mind, we turn to the particular assertion of the Chariho Regional School Committee, that Felkner, by taking the oath of town councilman for the Town of Hopkinton, vacated his office on the Chariho Regional School Committee as a matter of law.

**A**

**Hopkinton Town Charter**

The Chariho Regional School Committee is the operating authority for the Chariho Regional School District, which encompasses the Towns of Charlestown, Richmond, and Hopkinton. The Chariho Regional School Committee is composed of eleven members, with representation from each of the three towns in proportion to their respective populations. The jurisdiction of the Chariho Regional School Committee is governed by the Chariho Act.[4]

The Hopkinton Town Charter, first adopted in 2002, is the governing law of the Town of Hopkinton. Because the Hopkinton Town Charter contains a specific provision about multiple officeholding, we first shall examine the charter to resolve whether Felkner's simultaneous membership on both the Chariho Regional School Committee and the Hopkinton Town Council is permissible. Section 1240 of the Home Rule Charter of the Hopkinton Town Charter states, with respect to multiple officeholding, that:

> "No elected member of the Town government shall hold more than one (1)

---

3. We note that the Attorney General did not participate in this case.

4. *See* P.L. 1958, ch. 55, as amended by P.L. 1986, ch. 286.

elective or [*sic*] position in the Town Government at the same time."

Section 1240 also contains the following additional language:

"Membership on boards or commissions that act as representation of the Town of Hopkinton in regards to the School District shall not disallow that elector from serving on another board, committee or commission in Town government."

The term "elected official" is defined later in the charter, and includes school committee members. Specifically, section 2130 of the Home Rule Charter of the Hopkinton Town Charter provides:

"Town Council members, *School Committee members,* Town Clerk, Moderator, Town Sergeant, Director of Public Welfare, District Moderators and District Clerks will be elected." (Emphasis added.)

■■ This Court long has abided by the principle that, "[w]hen * * * called upon to construe the provisions of a municipal charter, the usual rules of statutory construction are employed." *Town of Johnston v. Santilli,* 892 A.2d 123, 127 (R.I.2006) (quoting *Coventry School Committee v. Richtarik,* 122 R.I. 707, 713, 411 A.2d 912, 915 (1980)); *Stewart v. Sheppard,* 885 A.2d 715, 720 (R.I.2005); *see also Mongony v. Bevilacqua,* 432 A.2d 661, 663 (R.I.1981) (holding that the rules of statutory construction apply to municipal ordinances). We have recognized that "[i]t is the accepted rule that the provisions of city charters should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question." *Stewart,* 885 A.2d at 720 (quoting *Carter v. City of Pawtucket,* 115 R.I. 134, 138, 341 A.2d 53, 56 (1975)). "However, 'when the language of the statute is clear and unambiguous, the court must interpret it literally, giving the words of the statute their plain and ordinary mean-

ings.'" *Id.* (quoting *Labor Ready Northeast, Inc. v. McConaghy,* 849 A.2d 340, 345 (R.I.2004)). Thus, when faced with an unambiguous enactment, this Court will not engage in statutory construction but will apply the language as written. *State v. Greenberg,* 951 A.2d 481, 489 (R.I.2008).

■ Before proceeding with our examination of the charter, we must set out one additional canon of construction. When confronted with competing statutory provisions that cannot be harmonized, we adhere to the principle that "the specific governs the general * * *." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *see also* G.L.1956 § 43–3–26; *Casey v. Sundlun,* 615 A.2d 481, 483 (R.I. 1992). Because in this instance the specific terms are controlling, this Court will defer to the more precise language governing a particular subject.

■ At the outset, we observe that, by the plain language of the Hopkinton Town Charter, a member of the school committee is considered an elected official. This definition is explicit and requires no analysis on our part. It follows, with absolute certainty, that a school committee member likewise is an "elected member of the [t]own government" who, under section 1240 of the charter, *expressly is prohibited* from holding more than one elected position in town government at the same time.

■ Next, in light of the charter provision that permits serving on multiple boards, we must determine whether a member of the school committee reasonably can be considered a *member of a* "board, committee[,] or commission." To reach this determination, we must look at the charter in its entirety to discern the scheme set forth therein. When referring

to the Chariho Regional School Committee, the Hopkinton Town Charter makes its reference apparent by naming the "School Committee" by specific language.[5] Although the town charter also makes a general reference to boards, committees, and commissions, it reserves a more specific reference to the "School Committee" when the provision applies to that particular body alone. In other words, where in the charter the drafters intended to refer to the Chariho Regional School Committee, they did it explicitly by using the term "School Committee."

■ However, when referring more generally to another board, committee, or commission, the drafters have used this more general language. Because of this distinction in terms, we are satisfied that if the drafters of the Hopkinton Town Charter had intended to exclude the Chariho Regional School Committee from the prohibition against dual officeholding, they would have done so with the same specificity and clarity that is present in other provisions of the charter that apply to the Chariho Regional School Committee. As such, we conclude that the language in the charter is clear; it unambiguously prohibits dual officeholding by two elected officials, including, *inter alia*, a member of the Chariho Regional School Committee and the Hopkinton Town Council.

■ Despite this difference, Felkner nevertheless asserts that the following provision, as set forth in section 1240—"Membership on boards or commissions that act as representation of the Town of Hopkinton in regards to the School District shall not disallow that elector from serving on another board, committee or commission in Town government"—is an

exception to the general prohibition against dual officeholding in town government. However, when the Hopkinton Town Charter was adopted in 2002, and the same holds true today, the Chariho Act provided for a building committee and a finance committee for the regional school district, which are separate and distinct appointments from the elected members of the Chariho Regional School Committee. The exception under which Felkner seeks relief was not enacted so that an *elected* school committee member could serve simultaneously on the Chariho Regional School Committee and the Hopkinton Town Council. Rather, this provision exists so that *appointed* members of the building and finance committees can serve the Town of Hopkinton in some other, nonelected manner such as a member of some other "board, committee[,] or commission."

■ Because this is an action in quo warranto, it was Felkner's burden to establish his entitlement to the office. He has not done so. Having accorded the words of the Hopkinton Town Charter their plain and ordinary meaning, we conclude that the charter clearly prohibits dual officeholding by elected officials such as members of the Chariho Regional School Committee. Therefore, we hold that Felkner's position on the Chariho Regional School Committee terminated by operation of law when he undertook the oath of office as a member of the Hopkinton Town Council.

## B

### Doctrine of Incompatibility

Although this decision rests on the explicit prohibition against dual officeholding

---

5. For example, section 1250 of the Home Rule Charter of the Hopkinton Town Charter, discussing conflicts of interest, begins with the following language: "No member of the Town Council, *School Committee,* nor the Town Manager nor any officer or employee of the Town * * *." (Emphasis added.)

in the Hopkinton Town Charter, we are well aware that "[t]he simultaneous holding of more than one public office has been a traditional subject of public concern." *Cummings v. Godin,* 119 R.I. 325, 332, 377 A.2d 1071, 1074 (1977). Accordingly, we shall address the impact of the doctrine of incompatibility in this case. This Court previously has recognized the doctrine of incompatibility as the principal common-law concept dealing with officials who hold dual public offices with potentially overlapping duties.[6] *See State v. Brown,* 5 R.I. 1, 9–11 (1857).

■■■ The doctrine of incompatibility, still widely accepted today as a viable basis under which an individual may be divested of his or her public office, expressly forbids the holding of incompatible offices. *Advisory Opinion to the Governor,* 121 R.I. 64, 66–67, 394 A.2d 1355, 1356–57 (1978); *Cummings,* 119 R.I. at 333, 377 A.2d at 1074; *McCabe v. Kane,* 101 R.I. 119, 122, 221 A.2d 103, 105 (1966); *In re Opinion of the Governor,* 67 R.I. 197, 201, 21 A.2d 267, 270 (1941); *State ex rel. Metcalf v. Goff,* 15 R.I. 505, 506, 9 A. 226, 226 (1887). *See also* 3 McQuillin, *Municipal Corporations* § 12.67 at 367 (3d ed. 2001); 5 Stevenson, *Antineau on Local Government* § 76.05[9] (2d ed. 2007).

■■■ The primary inquiry in this analysis, whether the positions indeed are incompatible, depends in large part on the particular facts of each case, especially with respect to the functions and duties of the pertinent offices. The doctrine was set out by this Court in *Goff* more than a century ago, and is two-fold. First, "incompatibility does not depend upon the incidents of the offices, as upon physical inability to be engaged in the duties of

both at the same time." *Goff,* 15 R.I. at 506, 9 A. at 226. Secondly, two offices are incompatible if "one is subordinate to the other, and subject in some degree to its revisory power; or where the functions of the two offices are inherently inconsistent and repugnant." *Id.* at 507, 9 A. at 227. *See also State v. Lee,* 78 N.D. 489, 50 N.W.2d 124, 126 (1951) ("Incompatibility of offices exists where there is a conflict in the duties of the offices, so that the performance of the duties of the one interferes with the performance of the duties of the other."). Accordingly, "the question of incompatibility is to be determined from the nature of the duties of the two offices, and not from a possibility, or even a probability, that the defendant might duly perform the duties of both." *Goff,* 15 R.I. at 508, 9 A. at 228 (quoting *Brown,* 5 R.I. at 11).

In its original pronouncement of the rule, this Court explained that the holding of two incompatible offices results in a resignation of the first-acquired office because no person simultaneously can serve the public trust impartially when inconsistent duties and liabilities are involved. *Brown,* 5 R.I. at 9–10. *See also Goff,* 15 R.I. at 506, 9 A. at 226 ("It is well settled that, when a person accepts an office incompatible with one which he then holds, he thereby impliedly resigns or vacates his former office."); 3 McQuillin, § 12.67 at 367 ("[T]he mere acceptance of the second incompatible office per se terminates the first office as effectively as a resignation."). In explaining the premise upon which the rule of implied resignation is based, we stated that the resignation

"can be thought of as one of election, though not properly one of individual

6. Although in some jurisdictions the incompatibility analysis is guided not by the common-law doctrine of incompatibility, but instead by a statute prohibiting the holding of two offices by the same person, we have in Rhode Island no such statute, and therefore look to the well-settled tenets of the doctrine of incompatibility.

choice. There is no room for an actual election, unless it exists simply in choosing to accept a second, incompatible office. Once that act is done, the law implies an immediate resignation of the prior office, accompanied by a surrender of all claim and title to that office." *Advisory Opinion to the Governor,* 121 R.I. at 67, 394 at 1357.

This rule "is designed to serve firm public policy objectives, not the least of which is to ensure continuing certainty with regard to who holds public office." *Id.* Because of the unambiguous nature of this forfeiture, the public never is left wondering which office has been vacated. *Id.*

█ Whether two public offices are incompatible is a question of law to be determined by this Court upon examining the nature of the offices and their relationship to one another. *See Advisory Opinion to the Governor,* 121 R.I. at 69–70, 394 A.2d at 1358 (holding as incompatible the positions of Superior Court justice and District Court judge because a Superior Court justice has the power of review over a District Court judge); *Opinion of the Governor,* 67 R.I. at 205, 21 A.2d at 271 (holding as incompatible the offices of member of the General Assembly and member of the Board of Elections); *Goff,* 15 R.I. at 508–09, 9 A. at 227–228 (holding as incompatible the offices of deputy sheriff and judge of the District Court because of the supervisory role a judge of the District Court has over a deputy sheriff); *Brown,* 5 R.I. at 11 (holding as incompatible the offices of colonel of the line and major general of the division). *Cf. McCabe,* 101 R.I. at 123–26, 221 A.2d at 106–07 (declining to hold as incompatible the offices of the Supreme Court clerk and state senator, although noting that the simultaneous holding of the two positions may give rise to a potential conflict of interest).

█ Although our previous cases provide useful guidance, to proceed with our analysis we must conduct a careful examination of the character and functions of the offices of school committee member and town councilman, as well as their relationship with each other. The relationship between a town and a school district is defined by a number of potential contracts between these entities. Indeed, the Town of Hopkinton and the Chariho Regional School Committee enter into lease agreements; they contract with one another for water usage and distribution; the Hopkinton Town Council fills vacancies on the Chariho Regional School Committee;[7] and the Town of Hopkinton is the appropriating and taxing authority for the town's share of the Chariho Regional School District budget.

The Town of Hopkinton holds title to and operates the realty upon which the Ashaway and Hope Valley Schools (two schools in the Chariho Regional School District) are located. Although the Town of Hopkinton owns the real property upon which the schools physically are situated, the Chariho Regional School District is responsible for "all maintenance obligations and the payment of all expenses associated with the [property]." Because of their joint responsibilities with respect to these properties, the Hopkinton Town Council and the Chariho Regional School Committee may disagree over issues aris-

7. *See* Section 10 of the Chariho Act, which provides, in relevant part:
"In the event of any vacancy by death, resignation or incapacity to serve of any term of any member of said regional school district committee, the town council of the member town in which such vacancy occurs shall fill such vacancy by election by a majority vote of the town council of said town for the unexpired term of the member whose office is thus vacated." P.L. 1986, ch. 286, § 10.

ing with respect to the maintenance, up-keep, and operation of the buildings. For instance, in a February 2009 Chariho Regional School Committee meeting, the minutes indicate an extended dialogue concerning the lease for the Ashaway School and specifically the gas line on the premises. Although that particular issue apparently has been resolved, not every dispute necessarily will end as amicably.

Clearly, if permitted to hold both positions, Felkner may be faced with a potential clash of duties concerning a particular school building. He would have a vote as a member of the Hopkinton Town Council, which operates as landlord to the Chariho Regional School District; he also would have a vote as a member of the Chariho Regional School Committee, which stands as tenant to the Town of Hopkinton. If a dispute were to arise concerning improvements or alterations to either the Ashaway or Hope Valley Schools, the closing of one or both of the existing schools, or the building of a new school, it is unclear which role Felkner would play when casting his vote-school committee member or town councilman.

Moreover, and perhaps even more fundamentally, Felkner, as a school committee member, is obliged to make his "first and greatest concern" the "educational welfare of the students attending the public schools." G.L. 1956 § 16–2–9.1(a)(11). Yet, as a sitting town councilman, Felkner is charged with the competing duty of representing, first and foremost, the interests of the people of the Town of Hopkinton. The discord presented by these conflicting responsibilities is patent; Felkner cannot, as a member of the Chariho Regional School Committee, act principally for the children of all three towns (Charlestown, Richmond, and Hopkinton) when he has a concurrent duty to further the interests of the citizens of the Town of Hopkinton.

Because of the myriad of responsibilities and conflicting duties stemming from Felkner's dual positions, there is a great likelihood of a potential clash of duties that would result in a gross incompatibility of offices. Public policy demands that one who holds a public office discharge his or her duties with undivided loyalty; and a public officer, in holding a position of public trust, stands in a fiduciary relationship to the citizens that he or she has been elected to serve. *See Trist v. Child,* 88 U.S. (21 Wall.) 441, 450, 22 L.Ed. 623 (1874). We are of the opinion that an individual cannot properly act contemporaneously as a school committee member and as a member of the town council without encountering some significant discordant interests and issues during such simultaneous tenure. In the case before us, school committee member Felkner's duties to the entire Chariho Regional School District can readily run counter to town councilman Felkner's loyalty to the citizens of the Town of Hopkinton.

We have no doubt that Felkner was selected by his constituents to two elected positions because he offered ideas and plans that were favorable to the respective public constituencies. However, by serving on these two distinct bodies, he will be confronted with issues in which both the Chariho Regional School Committee and the Hopkinton Town Council have separate interests. Such a conflict inevitably would result in the silencing, to at least one of these constituencies, of Felkner's voice as their elected official. Because of this very real possibility, the common-law doctrine of incompatibility serves to force the officeholder to abandon one of the positions.

Accordingly, we conclude that the doctrine of incompatibility serves as an imper-

vious and insurmountable bar to dual officeholding in this case. By accepting a seat on the Hopkinton Town Council, and taking the oath of office, Felkner has vacated his seat on the Chariho Regional School Committee. We need not decide whether the Chariho Regional School Committee had the authority to determine whether Felkner resigned from the committee—an issue of concern nonetheless—because, before reaching that question, it was incumbent upon Felkner to satisfy his right to title to the office and not merely attack the Chariho Regional School Committee's procedure in ousting him. *See Seemann*, 606 A.2d at 1310. Because Felkner cannot prove his own title for the reasons set forth in this opinion, we need go no further.

### Conclusion

For the reasons stated herein, we conclude that the offices of member of the Chariho Regional School Committee and member of the Hopkinton Town Council cannot be held at the same time by the same person. The petitioner is unable to fully and faithfully perform the duties of both offices in every instance. By accepting the office of member of the town council, the petitioner *ipso facto* resigned his office as member of the Chariho Regional School Committee. Let a judgment of ouster from the office of school committee in the Chariho Regional School District be entered against Felkner.

Justice FLAHERTY did not participate.