SUPPLEMENTAL DECISION
This supplemental decision is aimed at clarifying this Court's decision of August 20, 2008. In that decision, the Court determined that Governor Carcieri is subject to the laws of this State, including chapter 11 of title 36 of the General Laws, which imposes the obligation to collectively bargain with the state employees' bargaining agents; to submit unresolved issues to mediation; and to proceed to binding arbitration in the absence of conciliation. It also is aimed at putting to rest any notion that the Governor may act unilaterally by implementing Executive Order No. 08-06[1] before the mediation, conciliation, and arbitration proceedings have been finalized, or a new collective bargaining agreement executed. The former was addressed directly by the Court's decision of August 20, 2008, and the latter by implication. Both are easily illuminated further. *Page 2 
To be sure, the question of whether the Governor may take unilateral action against the unions can be answered by the Rhode Island State Labor Relations Board, pursuant to its existing rules and regulations. The Board's rules and regulations provide that "any interested party may file a petition for a declaratory ruling, as to the statutory provision or any rule or order of the Board." See § 4.01.3 (entitled Request for Declaratory Ruling). Additionally, the Board's regulations governing the filing and disposition of unfair labor practices allow for the amendment of a complaint and, thus, the question of unilateral action could be addressed in the context of the pending ULP 5917. See § 9.01.4 (entitled Amendment of Charge).
However, it has been the Governor's argument all along that he can act unilaterally and is not subject to laws such as the State Labor Relations Act — notwithstanding the circular reasoning evidenced by his statement that ". . . . we are looking forward to advancing our case before the State Labor Relations Board." (Def.'s Mem. in Opposition, at 3 and 17, dated Aug. 6, 2008; Office of the Governor, press release dated Aug. 20, 2008.) Moreover, the Rhode Island State Labor Relations Board has long since decided the question in an unrelated proceeding, specifically determining that an employer may not unilaterally implement terms and conditions of employment, with or without impasse. See R.I.State Labor Relations Bd. and Warwick Sch. Comm., Case No. ULP 4647, Decision and Order dated 11/10/92, at p. 7 ("May an employer unilaterally implement terms and conditions of employment, with or without impasse, pending execution of a new agreement? We conclude that it may not.").
So, given the rather unusual procedural posture of this case, and the Governor's core contention that he is excused from adhering to the principles of labor relations law, *Page 3 
which include precedent for the proposition that he cannot act unilaterally, it would be senseless for this Court to avoid giving a more direct answer to these questions now, only to reach them again in a subsequent administrative appeal. Finally, questions of statutory construction are also within the ambit of this Court's jurisdiction, G.L. 1956 § 9-30-1 et seq. (Uniform Declaratory Judgment Act)[2] and questions pertaining to the Governor's right to take unilateral action against the unions are well within the ambit of the questions of law raised by this case. Therefore, this Court has supplemental jurisdiction to pass upon these questions notwithstanding the Court's lack of original jurisdiction to dispose of the substance of Union's unfair labor practice claims.
Although the parties' respective agendas have resulted in a factual squabble about whether the talks leading to the instant debacle qualified as contract negotiations, both are cognizant that they must collectively bargain. The Governor claims that contract negotiations had been going on for months before resulting in an impasse that caused him to break off negotiations. (Def.'s Mem. in Opposition, at 4; Plf.'s Ex. 5, press release of Aug. 25, 2008.) The Union claims that the talks did not constitute collective bargaining and that it only recently made its demand for formal negotiations on the expired collective bargaining agreement. (Plf.'s Mem. in Support, at 5.) Either way, the collective bargaining requirements set forth in chapter 11 of title 36 have been triggered but have yet to be completed. See G.L. 1956 § 36-11-1 etseq. (entitled Organization of State Employees). Therefore, the parties can hardly be said to have reached the point of impasse. *Page 4 
As loudly declared at pages 15-16 of this Court's August 20, 2008 decision, chapter 11 of title 36 requires the state's chief executive, or his or her designee, to recognize and negotiate with the collective bargaining representative of a certified collective bargaining unit. Any resulting agreements must be reduced to a written contract.See §§ 36-11-1 and 36-11-7. Because the chief executive, or his designee, is acting as the bargaining agent for the employer — as opposed to administrator of the State's laws — chapter 11 does not infringe on the chief executive's constitutional powers. Accordingly, the Rhode Island State Labor Relations Board plainly has authority over controversies between employers and collective bargaining units, regardless of whether the employer is the State, one of the State's political subdivisions, or from the private sector.
In the event that the bargaining agent and the chief executive are unable to reach an agreement on an existing contract within 10 days of its expiration, the statutory imperatives are clear. Any and all unresolved issues must be submitted to the Rhode Island State Labor Relations Board for compulsory mediation. See § 36-11-7.1(c). Even where the parties seemingly have reached an impasse, unresolved issuesmust be submitted to the Board for conciliation or fact finding; thereafter, any issues that remain outstanding must be referred to binding arbitration. See §§ 36-11-8 and 36-11-9. Although the statutory framework contains tight timelines and anticipates "fast track" resolution of contract disputes, both parties are in default of these statutory time frames — assuming the Governor is correct in his view of when their collective bargaining process actually began. Irrespective of the timing of the proceedings, however, the language of the statutory scheme is mandatory and the parties may not ignore, and cannot waive, the *Page 5 
requirement that they participate in the Rhode Island State Labor Relations Board's compulsory proceedings.
Furthermore, as recognized by the Rhode Island State Labor Relations Board in Rhode Island State Labor Relations Board and Warwick SchoolCommittee, implicit in the Legislature's public policy declarations, the statutory process, and the Rhode Island State Labor Relations Board's rules and regulations, is that the parties must act within the legislatively imposed process and not outside of it. To do otherwise would render the process meaningless; thwart the legislative intent behind the Labor Relations Act; contravene public policy; and undermine the rule of law — or, as the Governor argued in his papers, trump the law. (Def.'s Mem. in Opposition, at 3, dated Aug. 6, 2008.) However, the law no more permits the Governor to act unilaterally with respect to matters that are the subject of the State of Rhode Island Labor Relations Board processes than it permits the Union itself to act unilaterally. So, for example, if a state employees' union staged a walk-out before the compulsory processes were completed or a new agreement executed, this Court would not hesitate to order its members back to work — even if the walk-out otherwise was lawful. Similarly, the State and its chief executive must adhere to the process established by law and must not attempt to circumvent it.
Important policy considerations backing the State's labor relations laws also compel adherence to the procedures established by the Legislature. The Legislature clearly stated its findings and policy objectives when it adopted the Rhode Island Labor Relations Act.See G.L. 1956 § 28-7-1 et seq. The Legislature spoke loudly when it found, "[w]hen some employers. . . . refuse to recognize the practice and procedure of collective bargaining, their actions lead to strikes, lockouts, and other forms of industrial *Page 6 
strife and unrest which are inimical to the public safety and welfare. . . ." Section 28-7-2(b). The Legislature went on to determine,
 "[e]xperience has proved that protection by law of the right of employees to organize and bargain collectively removes certain recognized sources of industrial strife and unrest, encourages practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions, and tends to restore equality of bargaining power between and among employers and employees, thereby advancing the interests of employers as well as employees." Section 28-7-2(b).
The Legislature further declared,
 "[i]n interpretation and application of this chapter and otherwise, it is declared to be the public policy of this state to encourage the practice and procedure of collective bargaining, and to protect employees from the exercise of full freedom of association, self organization, and designation of representatives of their own choosing for the purposes of collective bargaining . . . free from the interference, restraint, or coercion of their employers." Section 28-7-2(c).
Finally, the Legislature declared, "[t]his chapter shall be liberally construed for the accomplishment of this purpose" and "this chapter shall be deemed an exercise of the police power of the state for the protection of the public welfare, prosperity, health, and peace of the people of the state." Section 28-7-2(e) and (f). Unquestionably, then, the law and the public policy of this State prohibit unilateral action by either party until, at the very earliest, the mediation, conciliation, and arbitration processes of chapter 11, title 36 have been completed.
As with respect to the separation of powers considerations addressed in this Court's decision of August 20, 2008, the Governor's obligation to adhere to the law is not merely a question of degree. In other words, this is not a question of whether the Governor is entitled to ignore the law so long as the infraction may seem inconsequential *Page 7 
or justified by the circumstances. Nor is it a question of who can best afford to bear the brunt of the State's fiscal problems, or whether the increased payroll deductions are reasonable in light of the Council 94 members' pay and benefits.
Rather, the questions presented by the Governor's decision to charge the state workers with increased health-care costs and his argument that the state's laws do not govern the manner in which he goes about it, go directly to the core of his constitutional powers. No reasonable person would invite another Boston Tea Party event by arguing that the Governor has the authority to target, for example, the State's highest paid private-sector earners and, by executive fiat, bump their income taxes by ten dollars a week on the grounds that the amount of the tax is inconsequential or that the State's need for money requires it. So, too, the Governor must act within the bounds of the law when it comes to the state employees, including employees of the executive branch. SeeCastelli v. Governor, C.A. No. PC-0706322, 2008 R.I. Super. LEXIS 88, at *35 (July 31, 2008)[3]
So, yes, the Governor unilaterally can implement an executive order increasing non-union executive branch employees' health-care deductions, just as the Judiciary has already done with respect to its non-union personnel. But, no, he cannot implement an executive order increasing Council 94's health-care deductions if doing so runs afoul of the law — as it would under the present circumstances. The Governor is subject to all of the laws of this State that govern collective-bargaining disputes, and his executive powers neither supercede them, transcend them, nor trump them in whole or in part. The *Page 8 
Governor's obligation to adhere to the law includes the obligation to comply with the long-established principles of law that prohibit him from taking unilateral action pending mediation, conciliation, arbitration, or the execution of a new contract.
In issuing its orders in this case, this Court has been mindful of the strictures of § 28-10-2 that prohibit the issuance of temporary and permanent injunction in private-sector labor disputes absent an evidentiary hearing. Section 28-10-2, however, is inapplicable to disputes between the State, or its political subdivisions, and their employees. See Pawtucket v. Pawtucket Teachers Alliance, 87 R.I. 364,369-70, 141 A.2d 624, 627 (1958). Moreover, both parties in this case rested on their written submissions; neither requested an evidentiary hearing prior to this Court's disposition of this matter on its merits on August 20, 2008; and both acquiesced in this Court's exercise of its discretion to proceed to the merits of the case without evidentiary hearings, pursuant to Super. R. Civ. P. 65. Lastly, the facts are undisputed and the questions before the Court are questions of law only — thus rendering an evidentiary hearing pointless.
Finally, and of particular application to this case involving the State's chief executive, "[a]n injunction is an appropriate remedy to prevent wrongful acts by a public official who is acting without lawful authority and beyond the scope of his official power, even when he is acting under the color of his office."[4] 42 Am. Jur. 2d.Injunctions § 159 (2000). As this Court concluded at page 8 of its August 20, 2008 decision, "[t]he principal prerequisite to obtaining permanent injunctive relief is the prevailing party's ability to prove that it is being threatened with some immediate irreparable injury for *Page 9 
which no adequate remedy at law lies." See Paramount Office Supply Co.v. MacIsaac, 524 A.2d 1099, 1102 (R.I. 1987); see also Brown v.Amaral, 460 A.2d 7, 10 (R.I. 1983). Such irreparable injury must be either presently threatened or imminent, and harm that is prospective in nature, or that might not occur, cannot form the basis for injunctive relief. R.I. Turnpike Bridge Auth. v. Cohen, 433 A.2d 179, 182 (R.I. 1981). The law is sufficiently well-settled that constitutional violations, due to their very nature, constitute irreparable harm warranting injunctive relief. 11 C. Wright A. Miller, Federal Practice and Procedure, § 2948.1, at 161 (1995); 43A C.J.S. Injunctions § 65 (2004).
For all of the reasons stated herein, and for those enunciated in this Court's decision of August 20, 2008, the law requires both Governor Carcieri and Council 94 to submit to the Rhode Island State Labor Relations Board; to adhere to the procedures established by chapter 11 of title 36; and to refrain from unilateral action, each against the other. Accordingly, both are hereby ordered to appear before the Rhode Island State Labor Relations Board forthwith, failing which, they may be subject to supplemental proceedings and orders of this Court. Thereafter, the parties shall report back to the Court on a bi-weekly basis so that the Court can be assured that they are expediting the mediation, conciliation, and arbitration processes; provided, however, nothing in this Supplemental Decision and Order shall be deemed to prevent the parties from agreeing to proceed directly to the arbitration process or otherwise expedite matters, subject to the consent of the Board.
Furthermore, in light of the Governor's persistence, as revealed by his most recently-evidenced intention to proceed with implementation of Executive Order No. 08-06 before awaiting the outcome of the Rhode Island State Labor Relations Board *Page 10 
proceedings, (see Office of the Governor, press release dated Aug. 20, 2008), this Court once again is faced with no other alternative but to restrain and enjoin the Governor from implementing Executive Order No. 08-06, or its substantial equivalent — this time against Council 94's executive-department members. This order shall remain in effect until such time as the proceedings before the Rhode Island State Labor Relations Board have been finalized and, thereafter, the Governor may implement Executive Order No. 08-06 only to the extent permitted by law.
[1] In an August 20, 2008 press release issued by the Office of the Governor in which the Governor "declared victory today with the decision. . . . not to prevent the implementation of his Executive Order on Council 94 members who are employees of the Executive Branch" and "[t]he co-share payments will be deducted from employees pay checks, retroactive to the August 8, 2008 pay period." See Office of the Governor, press release dated Aug. 20, 2008. Thereafter, Council 94, in particular, requested clarification from this Court.
[2] Although the parties have not explicitly requested declaratory rulings from this Court, such a request is implicit in many of the issues they have raised and, necessarily, this Court's authority to exercise its discretion in making declarations is implicated.
[3] As noted in that portion of this Court's August 20, 2008 discussion of separation of powers questions, the Castelli decision was based, in part, upon the Supreme Court's ruling in In re StateEmployees' Unions, 587 A.2d 919 (R.I. 1991). It is important to note that in deciding In re State Employees' Unions, the Supreme Court neither affirmed nor reversed the trial court's denial of injunctive relief but, instead, denied the unions' petition for writ of certiorari only on the grounds of lack of standing. Furthermore, and although the Court appended the trial justice's decision to its Opinion, stating that "the decision of the trial justice contains many pertinent findings and conclusions that we adopt," the Court did not identify which of the trial justice's findings and conclusions that it adopted. In re StateEmployees' Unions, 587 A.2d at 923.
[4] This Court has intentionally avoided questions touching upon the Governor's immunity from personal liability should he disregard the procedural and substantive due process guarantees attendant to the State's established legal processes and, instead, unilaterally implement Executive Order No. 08-06 under color of law. Those questions remain open.